**In the Matter of Alphonse GUARIGLIA, Bankrupt-Appellee,**

v.

**COMMUNITY NATIONAL BANK & TRUST COMPANY, Creditor-Appellant.**

**No. 73–B–141.**

United States District Court, E. D. New York.

Sept. 30, 1974.

Kalman Finkel, The Legal Aid Society by John E. Kirklin, Elaine C. Buck, The Legal Aid Society, New York City for bankrupt-appellee; Joan Mangones, Staten Island, of counsel.

Reuben E. Gross, Staten Island, for creditor-appellant.

BARTELS, District Judge.

Community National Bank and Trust Company ("Bank") appeals from an order of a bankruptcy judge restraining the Bank as a creditor from proceeding further to compel the bankrupt, Alphonse Guariglia, to comply with an order issued by the Civil Court of the City of New York, County of Richmond, punishing him for contempt of court by imposing a fine of $4,755 together with $50 costs. In May, 1969, the Bank obtained a

judgment in the Civil Court against Guariglia for the same amount. The Bank sat on its rights for three years and on October 28, 1972, served on Alphonse Guariglia and his wife an information subpoena pursuant to 7B N.Y.C.P.L.R. § 5223, requiring them to answer interrogatories regarding their assets as part of the Bank's effort to enforce the judgment. Neither responded to the subpoena. On November 28, 1972, the Bank served an order to show cause upon Guariglia as to why he should not be held in contempt, returnable December 22, 1972. Again Guariglia did not appear but instead took the order to his attorney. On December 29, 1972, a bailable attachment was issued by the Civil Court.

At this point Guariglia's attorney agreed to an examination of the bankrupt and his wife, to take place on February 15, 1973, upon the understanding that Guariglia's attorney would not be present and that the transcript would not be signed until the attorney had a chance to read the same. In the meantime, however, on February 7, 1973, Guariglia's attorney filed a petition in bankruptcy in this Court, which listed the debt to the Bank as a liability. Two days later a notice was sent to all creditors, including the Bank, fixing February 22, 1973, as the date for the first creditors' meeting, and April 11, 1973 was set as the last day to file objections to the bankrupt's discharge and applications to determine the dischargeability of debts claimed to be non-dischargeable pursuant to clauses (2), (4) or (8) of Section 17a of the Bankruptcy Act, 11 U.S.C. § 35a(2), (4) or (8).

On February 15, 1973, the bankrupt and his wife appeared at the office of the Bank's attorney and were examined as to their assets, but the transcript was not signed because the bankrupt's attorney was not at the examination and had not had an opportunity to examine the transcript. It was signed by the bankrupt on April 9, 1973 and returned on April 10, 1973, the day before the last day fixed for filing objections to the bankrupt's discharge and applications to declare debts non-dischargeable. In the interim the first meeting of creditors was held on February 22, 1973. No creditors appeared at such meeting and a trustee was appointed. Thereafter, on May 22, 1973, the bankrupt made a motion to amend the schedule of creditors previously filed and to add another creditor's name which had been inadvertently omitted. The motion was granted and the time to file objections was extended to July 16, 1973. No objections to discharge were ever filed by the Bank.

After receiving the signed transcript of the bankrupt's examination, counsel for the Bank moved for an order adjudging the bankrupt in contempt pursuant to 7B N.Y.C.P.L.R. § 5251, and fining him the amount of the judgment, $4,755. Over the opposition of the bankrupt, however, the Civil Court Judge on June 19, 1973, found the bankrupt in contempt, fined him in the amount of $4,755 plus $50 costs, and directed that the same be paid to the Bank in $20 weekly installments. Upon the bankrupt's application, the bankruptcy judge issued an injunction from which the Bank now appeals.

Two issues are presented by this appeal: (1) whether the bankruptcy court has the power to enjoin the prosecution of a contempt order of a state court, and (2) assuming jurisdiction, whether the bankruptcy court should exercise that jurisdiction upon the facts of this case. It is hardly necessary to observe that the power of the federal courts to enjoin state court proceedings is severely restricted except in the field of bankruptcy. Authorities for this proposition are manifold. Section 11a of the Bankruptcy Act (11 U.S.C. § 29 (a)) provides that a suit founded upon a claim from which a discharge would be a release "shall be stayed until an adjudication or the dismissal of the petition; if such person is adjudged a bankrupt, such action may be further stayed until the question of his discharge is determined by the court after a hear-

ing, . . . ." Section 2a of the Act (11 U.S.C. § 11(a)) specifically invests courts of bankruptcy "with such jurisdiction at law and in equity as will enable them to exercise original jurisdiction in proceedings under this Act, . . . ." Thus, courts of bankruptcy are courts of equity and as such have ancillary jurisdiction to effectuate and enforce their judgments of adjudication of bankruptcy and of discharge of bankruptcy debts. Pepper v. Litton, 308 U.S. 295, 303–304, 60 S.Ct. 238, 84 L.Ed. 281 (1939). In Local Loan Co. v. Hunt, 292 U.S. 234, 241, 54 S.Ct. 695, 697, 78 L.Ed. 1230 (1934), the Supreme Court affirmed a decision of the bankruptcy court enjoining the enforcement in the state court of an assignment of future earnings by the bankrupt. In discussing jurisdiction the Supreme Court said:

> "What has now been said establishes the authority of the bankruptcy court to entertain the present proceeding, determine the effect of the adjudication and order, and enjoin petitioner from its threatened interference therewith. It does not follow, however, that the court was bound to exercise its authority. And it probably would not and should not have done so except under unusual circumstances such as here exist."

Therefore, there can be no doubt that the bankruptcy court has authority to entertain the present application to stay the state court action.

The second question is whether there exists here such "unusual circumstances" which would justify the exercise of the Court's power to stay. There are a number of authorities which hold that if the contempt proceeding is a step to collect a judgment, then it should be stayed, the test being whether the fine was imposed by the state court to uphold its dignity or whether in effect it was a circumvented method of collecting a judgment against the debtor otherwise dischargeable in bankruptcy. If the proceeding in reality is one to punish the debtor for contumacious conduct against the dignity of

either the state or federal court, the bankruptcy court should not raise its hand to stay the proceeding. In re Bell, 53 F.Supp. 993 (E.D.N.Y.1943); In re McRoberts, 17 F.Supp. 82 (W.D.N.Y. 1936); In re Thomashefsky, 51 F.2d 1040 (2d Cir. 1931); Matter of Metz, 6 F.2d 962 (2d Cir. 1925); In re Hall, 170 F. 721 (S.D.N.Y.1909); 2 Remington on Bankruptcy 22 et seq., §§ 561–562.

On the other hand, if the contempt is not a contempt for which courts ordinarily punish an offender on their own motion but is in fact a method of collecting a debt upon the application of a creditor, then the so-called contempt is suspect and may in reality be nothing more than a label to assist the creditor. In In re Spagat, 4 F.Supp. 926 (S.D.N.Y. 1933), Judge Paterson observed that the fact that the fine imposed was to be paid to the creditor who initiated the contempt was irrelevant since this was a matter to be left solely to the discretion of the court. The fact that the fine imposed is to be paid to the creditor does not necessarily mean that there has been no contempt, even though the punishment is in aid of the creditor. No problem ensues if there is no bankruptcy. But when that fine is in the amount of the debt to be paid to a creditor by a debtor in bankruptcy, the contempt then becomes a method of according the creditor a preference by the collection of a provable debt dischargeable in bankruptcy. The more realistic and discriminating approach to the question seems to be that adopted by Judge Magruder in Parker v. United States, 153 F.2d 66 (1st Cir. 1946), where he said:

> "But there would seem to be no a priori reason why liability for a compensatory fine imposed in a civil contempt proceeding should not be deemed a 'debt' within the meaning of § 1(14) of the Bankruptcy Act, and a provable debt under § 63, 11 U.S.C.A. § 103. . . . (p. 71)

> .   .   .   .   .   .

> "As we have already seen, the compensatory fine is not properly to be

regarded as a penalty levied by the court for a contumacious act." (p. 72.)

To the same effect are In re Lenoble, 79 F.Supp. 457, 458 (S.D.N.Y.1948); In re Fortunato, 123 F. 622 (S.D.N.Y. 1903); and Matter of Adler, 144 F. 659 (2d Cir.), cert. denied, 201 U.S. 647, 26 S.Ct. 762, 50 L.Ed. 904 (1906). The contempt here involved was not a criminal contempt, nor did the order require the fine to be paid into court. The fine imposed equalled the amount of the judgment plus $50 costs payable to the judgment creditor. Labelling the order as a contempt proceeding does not change its character as a provable debt under the Bankruptcy Act. Here there are present unusual circumstances, justifying the exercise by the bankruptcy court of its inherent equity powers to restrain the enforcement of the state court contempt order to collect a judgment which is compensatory in nature constituting no defense against the dignity of the court.

The order of the bankruptcy court is hereby affirmed.

So ordered.