**US SPRINT COMMUNICATIONS COMPANY, et al., Plaintiffs,**

v.

**Wally BUSCHER, Defendant.**

**Civ. A. No. 87–2395–S.**

United States District Court, D. Kansas.

Aug. 8, 1988.

J. Nick Badgerow, Josephine A. Mayer, Spencer, Fane, Britt & Browne, Overland Park, Kan., Donald W. Giffin, Spencer, Fane, Britt & Browne, A.K. Wnorowski, B.A. Bianchino, US Sprint Communications Co., Kansas City, Mo., for plaintiffs.

Gerald B. Netzky, Redmond, Wash., Paul S. McCausland, Gott, Young & Bogle, P.A., Wichita, Kan., for defendant.

## MEMORANDUM AND ORDER

SAFFELS, District Judge.

On February 8, 1988, this court found defendant Wally Buscher in civil contempt for his failure to comply with two orders of this court. At a hearing on January 29, 1988, plaintiffs showed the court evidence indicating that Buscher had violated a preliminary injunction issued by this court, forbidding Buscher from distributing illegal US Sprint access codes. Buscher also failed to appear before this court at that hearing on January 29, 1988, as ordered by the court. After its finding of contempt, the court deferred sentencing and ordered the parties to submit briefing on the appropriate sentence. Sentencing was scheduled for July 22, 1988, at 9:00 a.m. However, on July 21, 1988, defendant Buscher filed a Chapter 7 bankruptcy proceeding in the Western District of Washington. The parties then disagreed as to whether this court's sentencing proceeding on the finding of civil contempt should be stayed pursuant to 11 U.S.C. § 362(a). The court postponed the sentencing pending the resolution of this question. After a review of the relevant authorities and the briefs submitted by the parties, the court is prepared to rule.

Little authority exists addressing the issue of whether a civil contempt sentencing is automatically stayed by a filing of a Chapter 7 bankruptcy proceeding. The first relatively modern case addressing the issue of the operation of a contempt citation after a petition for bankruptcy has been filed is *In re Marini*, 28 B.R. 262 (Bankr.E.D.N.Y.1983). The debtor in that case had been sentenced for civil contempt for violating a temporary restraining order. The matter was settled between the parties, and the debtor agreed to pay a $2,000 fine to the plaintiff. The debtor then filed a Chapter 7 bankruptcy proceeding, and listed the $2,000 fine as an outstanding debt. Plaintiff creditor brought an adversary action to have the fine declared "nondischargeable" under 11 U.S.C. § 523(a)(6), as a debt incurred for "willful and malicious injury by the debtor to another entity." The court determined that although the fine could not be deemed "nondischargeable" under § 523(a)(6), it could fall under the scope of § 523(a)(7) as a "fine, penalty, or forfeiture." *Id.* at 265. The court pointed out the distinction between contempt proceedings intended to effectuate collection of a judgment and those intended to "uphold the dignity of the court." *Id.* The court went on to point out that it was not necessarily determinative whether the fine for contempt was paid directly to the court or to the opposing party. Instead, the court said that it would look to whether the fine was meant to satisfy a judgment in favor of the opposing party or to punish. The court concluded that since the fine was intended to punish the debtor, it was within the purview of § 523(a)(7) and should be "nondischargeable." *Id.*

The court in *In re Gedeon*, 31 B.R. 942 (Bankr.D.Colo.1983), also found a contempt fine nondischargeable. In *Gedeon*, the defendant had violated a court order regarding the custody of his children, and was cited for civil contempt. Defendant's ex-wife sought to recover her attorneys' fees and personal expenses incurred in recovering her children. The court awarded those

amounts to plaintiff, and imposed a civil fine which would continue to increase until defendant complied with the custody order. When defendant then filed for bankruptcy, he contended that the attorneys' fees, personal expenses, and fine were dischargeable. The court disagreed. It determined that the fees and expenses were nondischargeable as payments to a former spouse for support, *see* 11 U.S.C. § 523(a)(5). The court also determined that the fine was nondischargeable under § 523(a)(7). That section provides that a debt is nondischargeable "to the extent such debt is for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss." The fine in *Gedeon* was payable to the defendant's ex-wife. However, the court decided that the fine was a nondischargeable debt anyway because "[a] civil fine, meant to coerce a defendant to obey a court order, would seem to be imposed to uphold the dignity of the court, even though the fine is payable to a plaintiff." *Gedeon*, 31 B.R. at 946. The determining factor, then, was whether the fine was compensatory and primarily for the benefit of the creditor, or whether it was intended primarily to be for the benefit of the government.

In *In re Corbly*, 61 B.R. 851 (Bankr.D.S. D.1986), the court determined that a portion of a civil contempt judgment was nondischargeable. The court adopted the approach of the *Marini* court, and stated that the test of whether a contempt judgment was dischargeable was whether it was meant to be compensatory or to uphold the dignity of the court. *Id.* at 857. And in *Guariglia v. Community Nat'l Bank & Trust Co.*, 382 F.Supp. 758 (E.D.N.Y.1974), the court determined that a contempt proceeding against a bankrupt should not be stayed if the judgment to be imposed was for the purpose of upholding the dignity of the court. If, however, the contempt proceeding was simply "a circumvented method of collecting a judgment against the debtor otherwise dischargeable in bank-

ruptcy," *id.* at 761, it was simply compensatory in nature and should be stayed. The debtor in that case was cited for contempt for his failure to pay a civil judgment, and the contempt judgment reimbursed the creditor for the amount it should have received on that original judgment. The court ruled that in such a case, the contempt proceeding was only a method of collecting a debt, and "the contempt [became] a method of according the creditor a preference by the collection of a provable debt dischargeable in bankruptcy." *Id.*[1]

While the issue before the court is not whether a civil contempt judgment would be dischargeable, as was the case in *Marini, Gedeon* and *Corbly*, the court finds the reasoning in those cases persuasive. The current Bankruptcy Code does not directly address the court's concern: whether a bankrupt may be sentenced on a civil contempt citation after he has violated direct orders of the court. At first glance, § 362(a)(1) does seem to stay this court's sentencing power because it halts any judicial proceeding. But this is not just any judicial proceeding. This court has already determined that defendant violated two direct orders of this court. It is within this court's inherent power to take whatever steps necessary to ensure those persons within its power comply with its orders. The court cannot conceive that Congress intended to strip the court of this power, and instead permit a party to blatantly violate direct orders of the court and then seek shelter from a bankruptcy judge. If this were so, the court's orders could be rendered almost meaningless. The court must retain the ability to compel compliance with its orders; a party seeking relief from his creditors is not free to run rampant in flagrant disregard of the powers of the court. A civil contempt judgment is one effective method of coercing compliance and of "upholding the dignity of the court."[2]

*Marini* spelled out the distinction between a contempt citation intended to enforce payment of a judgment and one in-

---

1. Of course, *Guariglia* was decided under the Bankruptcy Act of 1898, but the principles stated have been followed in cases decided under modern bankruptcy law, so it is still persuasive.

2. The court is aware of the narrow distinction between a fine imposed after a civil contempt finding in order to coerce future compliance with the court's orders, and a fine imposed to

tended to uphold the dignity of the court. *Gedeon* pointed out that a contempt citation issued to coerce a party to obey a court order is an order imposed to uphold the dignity of the court. This is so even if the contempt judgment is payable to the opposing party. *Corbly* echoed this ruling. *Guariglia* stood for the proposition that a judgment imposed to uphold the dignity of the court could withstand a bankruptcy filing, while a contempt citation used simply to collect a judgment owed the creditor was subject to the limitations of the bankruptcy code.

Defendant Buscher violated two direct orders of this court. He then sought to spurn the court's rulings and to avoid any pressure the court might impose to coerce his further compliance by running to the bankruptcy court. Now defendant may not only owe plaintiffs for his alleged wrongdoing as spelled out in the complaint, but he has scoffed at the authority of this court. This court must be able to take effective action to coerce his compliance with the preliminary injunction issued by this court and with future orders to appear before this court. For this reason, the court finds that its sentencing power is not stayed by defendant's Chapter 7 bankruptcy filing, and he will be sentenced with all due speed.

Defendant will be ordered to appear personally before this court on Monday, August 22, 1988, at 9:00 o'clock a.m., for

sentencing on the civil contempt citation entered February 8, 1988.

IT IS BY THE COURT THEREFORE ORDERED that the sentencing on the civil contempt citation entered against defendant on February 8, 1988, will be held at 9:00 o'clock a.m. on Monday, August 22, 1988. Defendant is ordered to appear personally before the court at that time.

---

punish a party for past violations of a court's orders. Of course, if the purpose of a contempt proceeding is primarily punitive, it is a criminal contempt proceeding. *In re Stewart*, 571 F.2d 958, 963 (5th Cir.1978). Due process rights then attach. *In re Oliver*, 333 U.S. 257, 275, 68 S.Ct. 499, 508, 92 L.Ed. 682 (1948). In the case at bar, the court has not issued a criminal contempt citation. The court does, however, intend to "uphold the dignity" of its rulings and coerce defendant's future compliance with those rulings by issuing a sentence on the civil contempt citation. A civil contempt judgment may seek to achieve such a purpose while still retaining its civil characterization. *See, e.g., Gedeon* and *Corbly, supra.* Even if this court's intention were interpreted to be primarily punitive by penalizing defendant for his past violations of the court's orders, his due process rights were accorded him in the hearing on February 8, 1988. *See Oliver*, 333 U.S. at 275, 68 S.Ct. at 508 (Defendant in criminal contempt proceeding has right to be advised of the charges against

him, a right to have a reasonable opportunity to meet those charges, the right to be represented by counsel, and the right to call other witnesses in his behalf.). In such an event, it would be patently clear that the sentencing proceeding would not be stayed. *See* 11 U.S.C. § 362(b)(1). Furthermore, due process may entitle defendant to a trial by jury on the charge that he violated the preliminary injunction; 18 U.S.C. § 3691 provides a criminal contempt defendant with a right to trial by jury when the contempt charge is disobedience of a court order, and the conduct complained of would also constitute a criminal offense. 18 U.S.C. § 1029 makes it a crime to sell unauthorized access codes like those Buscher allegedly sold in violation of the injunction. However, no right to a trial by jury would attach to the contempt charge that defendant violated the court's order to appear on January 29, 1988. Again, 11 U.S.C. § 362(b)(1) provides that such a proceeding would not be stayed.