Michael SCULLY, Plaintiff,

v.

IOWA DISTRICT COURT FOR POLK COUNTY, Defendant.

No. 91–1176.

Supreme Court of Iowa.

July 22, 1992.

Arvid D. Oliver, Des Moines, for plaintiff.

Rex Darrah, Des Moines, for defendant.

Considered by McGIVERIN, C.J., and CARTER, LAVORATO, NEUMAN, and SNELL, JJ.

SNELL, Justice.

Plaintiff, Michael Scully, filed a petition for a writ of certiorari in this court pursuant to Iowa Rule of Appellate Procedure 301 and requested a stay of execution of a Polk County district court order. We granted the writ and issued an order temporarily staying the district court order pending further order of this court. Scully challenges a district court order sentencing him to thirty days in the Polk County Jail for his contemptuous failure to comply with a decree of dissolution of marriage, which required him to discharge certain joint marital debts. Scully contends that because he filed a petition for bankruptcy relief in accordance with chapter 7, title 11, of the United States Code, the subsequent

issuance of the sentencing order is barred by the Bankruptcy Code's automatic stay. *See* 11 U.S.C. § 362(a) (1991). Because we conclude that the contempt sentence does not violate the Code's automatic stay provision, we now vacate the temporary stay and annul the writ.

### I. *Background Facts.*

On June 15, 1990, a decree of dissolution of marriage was entered in which Scully was ordered to pay certain joint debts and obligations that were incurred during the marriage. Scully failed to discharge at least one of those debts and, as a consequence, the creditor, Midwest Builders, initiated collection proceedings against Scully's former spouse, Sharon Scully.

On May 10, 1991, Sharon filed an application for an order to show cause as to why Michael should not be held in contempt of court for his failure to discharge the Midwest Builders debt in accordance with the dissolution decree. After a June 26 hearing on the matter, the district court issued an order on July 22, 1991, that found Scully to be in contempt of court. More specifically, the order stated that Scully, who had been employed at the time in question, had willfully failed to abide by the court's dissolution decree as it related to the Midwest Builders debt and would, therefore, be required to appear before the court on July 29, 1991, for sentencing. However, the order also indicated that in fixing a sentence on July 29, "the court may consider ... whether petitioner has paid Midwest Builders in full."

On July 26, 1991, Scully filed a chapter 7 bankruptcy petition (the "petition") with the United States Bankruptcy Court for the Southern District of Iowa. Then, on July 29, 1991, the contempt sentencing hearing convened as was directed in the July 22 order. After a hearing in which Scully's continuing failure to discharge the Midwest Builders debt as well as his July 26 bankruptcy filing were duly noted, an order unconditionally sentencing him to thirty days in jail was filed on July 30, 1991. Although not so specified, we assume that the contempt sentence was issued pursuant to Iowa Code section 598.23(1) (1991), which provides for a thirty-day jail commitment for willfully disobeying an order or decree dissolving a marriage.

Scully responded to the thirty-day contempt sentence by filing a petition for writ of certiorari and request for stay pursuant to Iowa Rule of Civil Procedure 310, which we granted. He contends that the issuance of a postpetition contempt sentence is violative of 11 U.S.C. § 362(a), the Bankruptcy Code's automatic stay provision, which provides in pertinent part as follows:

> Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title ... operates as a stay, applicable to all entities, of—
>
> (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceedings against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;
>
> (2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;
>
> . . . .
>
> (6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title;
>
> . . . .
>
> (b) The filing of a petition ... does not operate as a stay—
>
> (1) ... of the commencement or continuation of a criminal action or proceeding against the debtor;

Our review of this contention is for errors at law. Iowa R.App. P. 4.

### II. *The Interaction of Contempt Proceedings and the Automatic Stay Provisions of Section 362.*

Although this issue is one of first impression for us, it has received exhaustive treatment by the federal courts. The federal decisions can be dichotomized into two

general categories: those addressing post-petition contempt proceedings relating to the debtor's failure to discharge a prepetition debt in accordance with a prepetition court order, which is the case *sub judice*, and those relating to the prepetition failure of the debtor to perform some other court-mandated task.

With respect to the latter category of cases, the federal courts are in agreement that the filing of a bankruptcy petition does not preclude the commencement of criminal contempt proceedings designed to insure compliance with future court orders and, more generally, to uphold the dignity of the court. *In re Cherry*, 78 B.R. 65, 70 (Bankr.E.D.Pa.1987) (noting that criminal contempt proceedings are exempt from automatic stay per section 362(b)(1)); *In re Dumas*, 19 B.R. 676, 678 (9th Cir.Bankr. App.1982) (holding that state court's sentence to one week in jail and $275 fine for prepetition disobeyance of subpoena was not proscribed by the automatic stay); *cf. In re Gedeon*, 31 B.R. 942, 946 (Bankr. D.Colo.1983) (civil fine imposed for prepetition violation of custody order held to be nondischargable under 11 U.S.C. § 523(a)(7) given that fine, although payable to debtor spouse, was designed not to provide compensation, but to uphold the dignity of the court); *In re Marini*, 28 B.R. 262, 265 (Bankr.E.D.N.Y.1983) ($2000 prepetition contempt fine imposed for violation of a temporary restraining order held nondischargable under 11 U.S.C. § 523(a)(7) since fine was designed to punish and uphold the dignity of court rather than to effectuate collection of prepetition judgment); *In re Corbly*, 61 B.R. 851, 857 (Bankr.D.S.D.1986) (same). *But cf. Guariglia v. Community Nat'l Bank & Trust Co.*, 382 F.Supp. 758, 761–62 (E.D.N.Y. 1974), *aff'd*, 516 F.2d 896 (2d Cir.1975) (compensatory fine levied as a contempt sanction for debtor's failure to honor prepetition subpoena that is merely "circumvented method of collecting a judgment ... otherwise dischargable in bankruptcy," and not a proceeding "to punish the debtor for contumacious conduct against the dignity [of the court]" is violative of the automatic stay).

■ In addition, postpetition contempt proceedings not involving a debtor's failure to discharge a debt pursuant to a prepetition court order may also properly include a sentence that seeks to coerce the bankruptcy debtor into complying with the court's prepetition order. That is, the court may, without violating the automatic stay, issue a purgeable civil contempt citation designed to effect compliance with the prepetition order as well as vindicate the dignity of the issuing court. *David v. Hooker, Ltd.*, 560 F.2d 412, 417–18 (9th Cir.1977) (holding that predecessor to section 362 did not bar enforcement of a prepetition discovery order nor did it bar contempt proceedings pursuant to rule 37 of the federal rules of civil procedure); *U.S. Sprint Communications Co. v. Buscher*, 89 B.R. 154, 156–57 (D.Kan.1988) (holding that a chapter 7 debtor who is found to be in prepetition contempt of a preliminary injunction order concerning telephone access codes may be sentenced, including issuance of a fine, so as to coerce compliance with the injunction despite the existence of the automatic stay); *International Distrib. Ctrs., Inc. v. Walsh Trucking Co.*, 62 B.R. 723, 728–30 (S.D.N.Y.1986) (section 362 does not enjoin proceeding to enforce prepetition order prohibiting asset transfers via purgeable contempt sanctions since the sanctions are designed to uphold a court order and are not "calculated to enforce a money judgment, or to harass a [bankruptcy debtor]"); *Martin–Trigona v. Gouletas*, 15 B.R. 645, 646 (N.D.Ill.1980) (where debtor fails to comply with prepetition discovery order resulting in two prepetition contempt findings, the automatic stay does not prevent further contempt proceedings designed to present debtor "with an opportunity to demonstrate that he does not seek to flout [the] court's authority, and to dispel the appearance of criminally contumacious conduct that clings to his previous behavior"); *In re Cohoes Indus. Terminal Inc.*, 62 B.R. 369, 378 (Bankr.S.D.N.Y.1986), *aff'd*, 70 B.R. 214 (S.D.N.Y.1986) ("[A] state court prepetition order which does not relate to prepetition claims or property of the estate may be

enforced by contempt proceedings against the debtor ... in order to vindicate the dignity of the state court without violating the automatic stay."). *But see In re Cherry,* 78 B.R. 65, 70, 72–74 (Bankr.E.D.Pa. 1987) (automatic stay does apply to civil contempt proceeding relating to violation of prepetition state court order prohibiting competition in wholesale food business; however, ultimately concluding that relief from stay is appropriate given that plaintiff sought only prospective injunctive relief from a "morally culpable" chapter 13 debtor); *see also In re Rudaw/Empirical Software Prods. Ltd.,* 83 B.R. 241, 247 (Bankr.S.D.N.Y.1988) (defendant entitled to relief from stay for purpose of enforcing, by way of contempt proceedings, prepetition state court order prohibiting competition with respect to software program, since order does not relate to "collection of prepetition claims or property of the estate," but is designed to vindicate dignity of the court).

■ In contrast to the above line of cases, when the allegedly contemptuous conduct by the bankruptcy debtor arises from an alleged failure to comply with a prepetition court order requiring the discharge of a debt, as is the case with Scully, the contempt sanction must be examined to determine whether it is essentially coercive or punitive in nature. If the contempt sanctions are coercive in nature—*i.e.,* if the sanction is purgeable—the federal courts have concluded that the contempt proceedings are violative of the automatic stay. However, when the sanction is unconditional and, therefore, punitive in nature, the contempt proceedings are generally held to be exempt from the automatic stay.

In *In re Rook,* 102 B.R. 490 (Bankr. E.D.Va.1989), *aff'd,* 929 F.2d 694 (4th Cir. 1991), the debtor was subjected to two different contempt orders. The first order, which was issued prior to the filing of the bankruptcy petition, found the debtor to be in contempt of a prior divorce decree and property settlement agreement and, therefore, sentenced the debtor to five and one-half months in the county jail provided that "such sentence was suspended pending the payment of all sums due," so long as paid within sixty days. *Id.* at 494. The debtor, nevertheless, failed to discharge the debt, but did file for bankruptcy several years thereafter. *Id.* at 491. The second contempt order, issued subsequent to the bankruptcy filing, sentenced the debtor to an unconditional five-and-one-half-month jail term as a consequence of the debtor's failure to satisfy the debt as prescribed in the first contempt order. *Id.* When the debtor challenged the orders as being violative of the automatic stay, the court concluded that the second order, unlike the first, did not violate the automatic stay insofar as it was purely punitive in nature and did not seek to effect a "coerced dilution of the estate." *Id.* at 494–95. *Accord Stovall v. Stovall,* 126 B.R. 814, 816 (N.D.Ga.1990) (chapter 7 debtor is not protected by automatic stay from contempt proceedings regarding his prepetition violation of divorce decree property settlement so long as the proceedings seek not to enforce the underlying debt, but to punish the debtor and uphold dignity of court); *In re Altchek,* 124 B.R. 944, 959 (Bankr. S.D.N.Y.1991) (concluding that criminal contempt proceedings arising as a consequence of bankruptcy debtor's allegedly contemptuous refusal to abide by marital dissolution decree would be excepted from automatic stay by section 362(b)(1)); *In re Cherry,* 78 B.R. at 70 (noting that criminal contempt proceedings would come within the section 362(b)(1) exception *for criminal* proceedings); *Alltop v. Alltop,* 203 Ill. App.3d 606, 149 Ill.Dec. 116, 561 N.E.2d 394, 399 (App.1990) (holding that six-month prison sentence imposed in postpetition contempt proceedings for prepetition failure to discharge marital dissolution property settlement obligation was not barred by the automatic stay since sentence was not "designed to compel an alleged contemner to make a payment"); *cf. In re Marriage of Lueck,* 140 Ill.App.3d 836, 95 Ill.Dec. 222, 489 N.E.2d 443, 445 (1986) (thirty-day purgeable jail sentence issued in prepetition contempt proceedings arising out of chapter 13 debtor's violation of a child support order held not exempt from automatic stay). *Contra In re Sermersheim,* 97 B.R.

885, 888 (Bankr.N.D.Ohio 1989) (former spouse violated automatic stay when she made postpetition request to state court to hold chapter 7 debtor in contempt for debtor's alleged failure to make required payments under prepetition divorce decree); *In re Thayer*, 24 B.R. 491, 493 (Bankr. W.D.Wis.1982) (holding that former spouse's postpetition request for imposition of ninety-day jail sentence for bankruptcy debtor's failure to discharge prepetition divorce decree obligations constitutes a violation of the automatic stay since former spouse had a "collection motive").

In the realm of contempt proceedings arising from a debtor's failure to comply with a prepetition order requiring discharge of a debt, it can generally be said that criminal contempt proceedings are usually exempt from the automatic stay, whereas civil proceedings are not. This is so because "[c]ivil contempt is remedial; the penalty serves to enforce compliance with a court order or to compensate an injured party." *In re Stewart*, 571 F.2d 958, 963 (5th Cir.1978); *see Knox v. Municipal Court*, 185 N.W.2d 705, 707 (Iowa 1971) (drawing the same distinction). In contrast, "[c]riminal contempt is punitive; the penalty serves to vindicate the authority of the court and does not terminate upon compliance with a court order." *Stewart*, 571 F.2d at 963; *Knox*, 185 N.W.2d at 707. As such, criminal contempt sanctions do not frustrate the policy underlying the automatic stay, which is "to protect the relative position of creditors and shield the debtor from *financial pressure* during the pendency of a bankruptcy proceeding." *Rook*, 102 B.R. at 492 (emphasis added).

Our cases do not present a clear civil/criminal dichotomy in distinguishing between punitive and coercive contempt sanctions. However, purely coercive sanctions are those based on Iowa Code section 665.5. *See Amro v. Iowa Dist. Court*, 429 N.W.2d 135, 139 (Iowa 1988). Although sanctions punished under section 665.4 and section 598.23(1) have coercive attributes, *see Ickowitz v. District Court*, 452 N.W.2d 446, 450 (Iowa 1990), the gravamen of those sanctions is the execution of punitive statutes. *See McNabb v. Osmundson*, 315 N.W.2d 9, 15 (Iowa 1982) (section 598.23 is "primarily punitive and only indirectly coercive" in design). The sanction challenged in the present case is premised on a violation of section 598.23(1). The punitive nature of that statute is highlighted by the following language from section 598.22:

Prompt payment of sums required to be paid under section 598.11 and 598.21 is the essence of such orders or judgments and the court may act pursuant to section 598.23 regardless of whether the amounts in default are paid prior to the contempt hearing.

We conclude that the July 30, 1991 order unconditionally sentencing Scully to thirty days in jail is a contempt citation that is punitive in nature and is, therefore, exempt from the section 362(a) automatic stay provisions. The July 30 sentence was designed to punish Scully for flouting the terms of the June 15, 1990, marital dissolution decree, which required that he discharge the Midwest Builders debt. That decree was willfully violated *before* the automatic stay abated the obligation to pay. Of course, failure to pay *after* the automatic stay may not be punished as contempt. As was the case in *Rook*, the July 30 order was not coercive or purgeable and, therefore, did not improperly seek to effect a "coerced dilution of the estate." *Rook*, 102 B.R. at 494.

"Although section 362 is a shield to protect the debtor to provide for a 'fresh start,' the automatic stay was not intended by Congress to be used as a sword." *In re Clowser*, 39 B.R. 883, 886 (Bankr.E.D.Va. 1984). Accordingly, we now vacate the temporary stay of the district court order of July 30, 1991, sentencing Michael Scully to thirty days in Polk County Jail for his contempt of prepetition court orders and annul the writ of certiorari.

WRIT ANNULLED.