In re Raymond Allan LOWERY, Cynthia Dee Lowery Debtors.

Raymond Allan Lowery, Cynthia Dee Lowery Plaintiffs,

v.

McIlroy & Millian Defendant.

Bankruptcy No. 01–50839–293.
Adversary No. 02–4145–293.

United States Bankruptcy Court, E.D. Missouri, Eastern Division.

April 16, 2003.

Rory Ellinger, David Fondren, O'Fallon, MO, for Plaintiffs.

Tom Plunkert, Leritz, Pluntert & Bruning, P.C., St. Louis, MO, for Defendant.

## MEMORANDUM OPINION

DAVID P. MCDONALD, Bankruptcy Judge.

Debtors brought the instant adversary complaint against the law firm (the "Law Firm") that represented Debtor Raymond Allan Lowery's ("Raymond") former spouse in a child custody modification and contempt proceeding in the Circuit Court of Lincoln County, Missouri (the "State Court"). The State Court entered a citation for contempt (the "Contempt Order") against Raymond for his failure to obey a prior order issued by the court. Debtors contend in their adversary complaint that

the Law Firm violated the automatic stay created by 11 U.S.C. § 362(a) and the discharge injunction contained in 11 U.S.C. § 524(a)(2) by attempting to enforce the Contempt Order.

The Court finds that because the State Court's primary purpose in issuing the Contempt Order was to uphold the dignity of a prior order, the Law Firm's enforcement of the Contempt Order is outside the scope of § 362(a). Also, because the Law Firm's attempt to enforce the Contempt Order after Debtors had received their discharge was an *in rem* proceeding, the Law Firm did not violated § 524(a)(2). Accordingly, the Court will enter judgment in favor of the Law Firm.

## JURISDICTION AND VENUE

This Court has jurisdiction over the parties and subject matter of this proceeding under 28 U.S.C. §§ 1334, 151, and 157 and Local Rule 9.01(B) of the United States District Court for the Eastern District of Missouri. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), which the Court may hear and determine. Venue is proper in this District under 28 U.S.C. § 1409(a).

## FACTUAL AND PROCEDURAL BACK-GROUND

The State Court dissolved the marriage of Raymond and his former spouse, Sandra Lowery ("Sandra"), on September 14, 1993. The State Court awarded primary physical custody of both of the couple's minor children, Justin and Tara, to Sandra. The State Court modified its decree in a judgment dated February 2, 2000 (the "Modification Order"). In the Modification Order, the State Court granted primary physical custody of Justin to Raymond and primary physical custody of Tara to Sandra with visitation rights to the respective non-custodial parent. The Modification Order also required each parent to encourage the children to "have a good and loving relationship with the other parent and to exercise all visitation with the other parent."

Sandra filed a motion for contempt and to modify the child custody arrangement as set forth in the Modification Order. Sandra alleged in this motion that Raymond had failed to obey the Modification Order by failing to deliver Justin for visitation and failing to return Tara after her visitation with Raymond. The State Court agreed and entered the Contempt Order against Raymond on August 17, 2001.

The State Court specifically found in the Contempt Order that Raymond had willfully and intentionally disobeyed its Modification Order by interfering with Sandra's visitation rights with respect to Justin and failing to return Tara to Sandra. The State Court also found that Raymond alienated the affection of Justin from Sandra. As punishment for Raymond's willful disobedience of the Modification Order, the State Court ordered Raymond to report to the Lincoln County Jail on October 1, 2001 to serve two weeks in jail. The State Court, however, gave Raymond the option of purging his contempt by paying Sandra's attorney's fees in the amount of $3,075.00 prior to October 1, 2001.

Raymond failed to either report to the Lincoln County Jail or pay Sandra's attorney fees by October 1, 2001 as required by the Contempt Order. Raymond and his current wife, Cynthia Dee Lowery, (collectively the "Debtors") filed a petition for relief under Chapter 7 of the United States Bankruptcy Code on October 3, 2001. The Law Firm filed on behalf of Sandra a Motion for Commitment with the State Court on October 24, 2001. (the "Commitment Motion"). Sandra requested in the Commitment Motion that the State Court issue an order of commitment directing the Sheriff of Lincoln County to arrest and incarcerate Raymond for his

failure to either report to the Lincoln County Jail or pay Sandra's attorney's fees as required in the Contempt Order.

The State Court issued an Order of Commitment and a Writ of Commitment on November 5, 2001, directing the Sheriff of Lincoln County to take Raymond into custody and confine him for a two week period in the Lincoln County Jail or until he paid Sandra's attorney's fees as provided in the Contempt Order.

Pursuant to the Writ of Commitment, the Sheriff of Lincoln County arrested Raymond on November 17, 2001. Raymond posted a bond, apparently financed by his relatives, in the amount of $3,075 and the Sheriff's Department of Lincoln County released Raymond.

Raymond filed a motion to return the $3,075 bond on or about November 14, 2001. The State Court initially denied Raymond's request to return the bond in an order dated December 3, 2001. The State Court, however, vacated its December 3, 2001 order in an order dated January 4, 2002. In the January 4, 2002 order, the State Court required that the Clerk of the Circuit Court of Lincoln County retain the bond until: (1) Raymond serves two weeks in the Lincoln County Jail as required in the Contempt Order; (2) Raymond purges his contempt of the Modification Order by paying Sandra's attorney's fees in the amount of $3,075; or (3) this Court orders that the bond be released. The State Court further mandated that if this Court ordered that the bond be released back to Raymond, Raymond was to immediately report to the Lincoln County Jail to serve the two weeks in jail as outlined in the Contempt Order.

On February 27, 2002, the Law Firm filed with the State Court a motion to forfeit the bond on behalf of Sandra (the "Forfeit Motion"). The Law Firm has not taken any action to prosecute the Forfeit Motion and it is still pending with the State Court.

■ Debtors filed the instant adversary complaint against the Law Firm on May 22, 2002. Although Debtors failed to specify what exact actions of the Law Firm violated the automatic stay and the discharge injunction, Debtors apparently contend that the Law Firm violated the automatic stay and the discharge injunction by filing the Commitment Motion and the Forfeit Motion respectively.[1] The Law Firm counters by asserting that because the purpose of the State Court in issuing the Contempt Order was to uphold the dignity of the Modification Order, its attempt to enforce the Contempt Order was outside the scope of the automatic stay and the discharge injunction.

At trial, both parties introduced portions of the deposition testimony of the State Court judge, Dan Dildine.[2] Judge Dildine testified in his deposition that his intent in issuing the Contempt Order was to punish Raymond for his willful disregard of the Modification Order and not to induce Raymond to pay Sandra's attorney's fees. Judge Dildine further stated that he would still allow Raymond to purge his contempt of the Modification Order and thus avoid

---

1. The Court notes that although neither party has addressed the issue, attorneys can be held liable for violating the automatic stay under 11 U.S.C. § 362(h) even when the attorney is simply acting on behalf of a client. *Little Pat, Inc. v. Conter (In re Soll)*, 181 B.R. 433, 445 (Bankr.D.Ariz.1995).

2. Although it is unclear whether Judge Dildine was "unavailable" as a witness under Fed.R.Evid. 804, both parties waived any objection to the other party's introduction of Judge Dildine's deposition testimony by introducing a portion of his deposition at trial. Fed.R.Civ.P. 32(a)(4); *Mid–West Natl. Life Ins. Co. v. Breton*, 199 F.R.D. 369, 371–72 (N.D.Fla.2001).

spending two weeks in jail if Raymond paid Sandra's attorney's fees.

Debtors produced the testimony of Raymond at trial. Raymond testified on direct examination that he attempted to arrange a payment schedule to pay Sandra's attorney's fees to purge himself of his contempt of the Modification Order but that Sandra refused to accept payments over time. Raymond testified on cross-examination that his primary purpose in filing the petition for relief with this Court was to evade the punishment the State Court mandated in its Contempt Order. Raymond also conceded on cross-examination that he knew that the Contempt Order required him to either pay Sandra's attorney's or report to the Lincoln County Jail by October 1, 2001 but that he simply disregarded the Contempt Order and had no intention of complying with its terms.

Because the evidence adduced at trial demonstrates that the State Court's primary intent in issuing the Contempt Order was to uphold the dignity of its earlier Modification Order, which Raymond willfully disobeyed, the Law Firm's attempt to enforce the Contempt Order was outside the scope of the automatic stay. Also, because the Forfeit Motion is an *in rem* proceeding against the bond and not an *in personam* action against Raymond, the Law Firm did not violate § 524(a)(2) in filing that motion. Accordingly, the Court will enter judgment in favor of the Law Firm.

## DISCUSSION

*A. A Civil Contempt Order is Outside the Ambit of § 362(a) if its Primary Purpose is to Uphold the Dignity of a Prior Order.*

■ Debtors first contend that the Law Firm's attempt to enforce the Contempt Order by filing the Commitment Motion with the State Court violated the automatic stay. Debtors argue that under § 362(a)(1), any post-petition judicial proceeding against the debtor, including the enforcement of a civil contempt order, violates the automatic stay.[3] The Law Firm counters by asserting that because the State Court entered the Contempt Order to uphold the dignity of the Modification Order, the Law Firm's attempt to enforce the Contempt Order is outside the scope of the automatic stay. The Court agrees with the Law Firm's position.

Section 362(a)(1) recites that a filing of a petition operates as a stay of the commencement or continuation of a judicial proceeding against the debtor. A minority of courts have strictly interpreted §§ 362(a)(1) and have held that it is broad enough to apply to any post-petition judicial proceeding any the debtor, including the enforcement of a pre-petition civil contempt order. *See e.g. Goodman v. Albany Realty Co. (In re Goodman)*, 277 B.R. 839, 842 (Bankr.M.D.Ga.2001); *Tipton v. Adkins (In re Tipton)*, 257 B.R. 865, 874 (Bankr.E.D.Tenn.2000); *Sermersheim v. Sermersheim (In re Sermersheim)*, 97 B.R. 885, 889 (Bankr.N.D.Ohio 1989). Accordingly, under the minority position, any proceeding to enforce the provision of a civil contempt order violates § 362(a)(1).

The majority of courts that have considered this issue, however, have held that the enforcement of a civil contempt order is outside of the scope of the automatic stay provided the primary purpose of the issuing court is to uphold the court's dignity. *See e.g. NLRB v. Sawulski*, 158 B.R. 971, 977 (E.D.Mich.1993); *O'Brien v.*

---

**3.** The Law Firm conceded at trial that the Contempt Order is a civil in nature. Thus, the criminal proceeding exception to the automatic stay contained in § 362(b)(1) is inapplicable here.

*Nachtigal (In re re O'Brien),* 153 B.R. 305, 308 (D.Or.1993); *U.S. Sprint Communications v. Buscher,* 89 B.R. 154, 156 (D.Kan. 1988); *Siskin v. Complete Aircraft Serv. (In re Siskin),* 258 B.R. 554, 565–66 (Bankr.E.D.N.Y.2001); *Lori v. Lori (In re Lori),* 241 B.R. 353, 355 (Bankr.M.D.Pa. 1999); *In re Dunham,* 175 B.R. 615, 617 (Bankr.E.D.Va.1994); *Rook v. Rook (In re Rook),* 102 B.R. 490, 493–94 (Bankr. E.D.Va.1989).

■ The Court will adopt the majority position. As one court has observed, Congress did not intend to strip non-bankruptcy courts of their inherent authority to enforce their own orders by allowing parties to escape the consequences of willfully disobeying orders by filing a petition for relief under the Bankruptcy Code. *Buscher,* 89 B.R. at 156. Further, because of federalism concerns and comity with state courts, limiting the scope of § 362(a)(1) to exclude the enforcement of a pre-petition civil contempt order intended to uphold the dignity of a prior order is particularly important when a state court has issued the pre-petition civil contempt order. *O'Brien,* 153 B.R. at 308; *Siskin,* 258 B.R. at 566. Accordingly, the Court adopts the majority position and holds that any attempt to enforce a civil contempt order issued by a state court is not within the ambit of § 362(a) provided that the state court's primary purpose in issuing the order is to uphold the dignity of a previous order.

## B. The Primary Purpose of the Contempt Order was to Uphold the Dignity of the Modification Order.

■ The Court finds that the State Court's primary purpose here in issuing the Contempt Order was to uphold the dignity of its Modification Order. Debtors argue that because the Contempt Order gave Raymond an option to purge himself of his prior contumacious conduct, it was simply intended to coerce him to pay Sandra's attorney's fees. The analysis, however, of whether a contempt order is intended to coerce payment of a debt or uphold the dignity of a prior order is much more flexible and nuanced than simply examining whether the order contains a purging option.

■ A purging option contained in a contempt order maybe evidence that the citation is an attempt to coerce payment of a pre-petition debt. *See Rook,* 102 B.R. at 494. The existence of a purging option, however, does not result in a *per se* finding that the contempt order is an attempt to coerce pre-petition debt. *Stovall v. Stovall,* 126 B.R. 814, 815–16 (N.D.Ga.1990); *Dunham,* 175 B.R. at 617. Rather, a bankruptcy court in determining whether a civil contempt order is intended to extract payment of a pre-petition debt or to uphold the dignity of a prior order must examine the totality of the circumstances. *Lori,* 241 B.R. at 355. Here, after examining the totality of the circumstances, the Court finds that Debtors' filing of their petition did not stay the enforcement of the Contempt Order for three reasons.

First, by the time the Law Firm filed the Commitment Motion, Raymond's ability to purge himself as outlined in the Contempt Order had expired. Thus, at the point the Law Firm began to attempt to enforce the Contempt Order, the Contempt Order unequivocally required Raymond to be incarcerated. The only relief available to Sandra at the time the Law Firm filed the Commitment Motion was to request that the State Court issue an order directing the Sheriff of Lincoln County to arrest and incarcerate Raymond. The fact that the purging option contained in the Contempt Order had expired and the sole remedy to enforce the Contempt Order was to incarcerate Raymond is signifi-

cant evidence that the filing of the Commitment Motion was outside the ambit of § 362(a). *See Rook*, 102 B.R. at 495.

Second, Raymond's own testimony demonstrates that he filed for relief under the Code simply as an attempt to escape punishment for his contumacious behavior. Raymond admitted on cross-examination that the State Court did hold him in contempt for his willful and intentional failure to comply with the Modification Order. Raymond further conceded on cross-examination that he believed that the State Court was incorrect in issuing the Contempt Order and that he had no intention of complying with the terms of the order. Raymond additionally testified that the principal reason for filing the petition for relief was to avoid the effects of the Contempt Order. This Court is unwilling to allow Raymond to use the bankruptcy process to flout the State Court's inherent authority to punish him for his willful and intentional violation of its Modification Order. *See O'Brien*, 153 B.R. at 308.

■ The final reason why the Court finds that the Law Firm's enforcement of the Contempt Order was not stayed by § 362(a) is that Judge Dildine testified that his primary purpose in issuing the Contempt Order was to punish Raymond for willfully and intentionally violating the Modification Order.[4] This testimony is supported by Judge Dildine's findings of fact contained in the Contempt Order where he recited that Raymond had willfully and deliberately violated the terms of the Modification Order. Judge Dildine's right to uphold the dignity of the Modification Order, which he found that Raymond

had willfully and deliberately violated, and his testimony that the Contempt Order was an attempt to uphold the dignity of the Modification Order, is clearly entitled to great deference by this Court. *Dunham*, 175 B.R. at 617 n. 2.

In conclusion, after reviewing the evidence adduced at trial, the Court finds that the Law Firm's attempt to enforce the Contempt Order does not fall within the ambit of the automatic stay contained in § 362(a). Therefore, the Law Firm did not violate the automatic stay by filing the Commitment Motion.

*C. The Law Firm did not Violate the Discharge Injunction.*

Debtors also assert in their complaint that the Law Firm violated the discharge injunction contained in § 524(a)(2) by filing the Forfeit Motion on behalf of Sandra. The Law Firm filed the Forfeit Motion on February 27, 2002, which was subsequent to Debtors' discharge, seeking an order from the State Court to release the $ 3,075.00 bond posted on behalf of Raymond.

■ Section 524(a)(2) prohibits any party from initiating an action against the former debtor to collect any debt as a personal liability of the debtor. Accordingly, the statute only acts as an injunction against *in personam* actions against the debtor and not *in rem* actions. *Bank One, N.A. v. Annen (In re Annen)*, 246 B.R. 337, 339 (8th Cir. BAP 2000). Here, because the Forfeit Motion is an *in rem* proceeding against the bond and not an *in personam* action against Raymond, the Law Firm did not violate § 524(a)(2).

---

4. Debtors argue that the Court should not consider Judge Dildine's testimony as to his purpose in entering the Contempt Order. A bankruptcy court, however, may consider a state court trial judge's testimony when the intention of the state court is relevant. *See*

*Sickal v. Frye (In re Frye)*, 231 B.R. 71, 73 (Bankr.E.D.Mo.1999) (examining the affidavit of a state court judge attesting to his reasons in awarding attorney's fees to the non-debtor spouse in a divorce proceeding).

An attempt to recover on a cash bond is an *in rem* action against the bond, not an *in personam* action. *See e.g. Karim v. Finch Shipping Co., Ltd.*, 94 F.Supp.2d 727, 734 (E.D.La.2000); *United States v. Jackson*, 904 F.Supp. 1185, 1187 (D.Or. 1995); *Mudge v. Macomb County*, 458 Mich. 87, 580 N.W.2d 845, 857 n. 2 (1998) (Weaver, J., Concurring); *Wiegand v. Landbeck*, 94 Md.App. 322, 617 A.2d 638, 642 (1993). Here, the Forfeit Motion is clearly an attempt to recover on the bond itself. Accordingly, it is an *in rem* action against the bond and not an *in personam* action against Raymond. Therefore, the Law Firm did not violate § 524(a)(2) by filing the Forfeit Motion.

## CONCLUSION

The State Court's primary purpose in issuing the Contempt Order was uphold the dignity of its prior Modification Order, which Raymond willfully and intentionally disobeyed. Thus, the Law Firm's attempt to enforce the Contempt Order was outside the scope of the automatic stay. Also, the Forfeit Motion was an *in rem* action against the bond an not an *in personam* action against Raymond. Accordingly, the Law Firm did not violate the discharge injunction contained in § 524(a)(2) by filing the Forfeit Motion. Therefore, the Court will enter judgment in favor the Law Firm.