NATIONAL LABOR RELATIONS
BOARD, Plaintiff,

v.

John SAWULSKI, d/b/a Midwest Mechanical Systems, a sole proprietorship, Midwest Mechanical Systems Contracting, Inc., a single employer and alter-egos, Defendants.

No. 93–CV–72592–DT.

United States District Court,
E.D. Michigan, S.D.

Sept. 13, 1993.

Mark D. Rubin, Detroit, MI, for plaintiff.

Fred L. Gibson, Sterling Heights, MI, for defendants.

## OPINION

GILMORE, District Judge.

### I

This matter is before the Court, who has been appointed a Special Master by the United States Court of Appeals, to enforce an order of the National Labor Relations Board after a finding by the Court that John Sawulski and Midwest Mechanical Systems Contracting, Inc. were in contempt of the Court of Appeals. As Special Master, this Court is to enforce the order of the United States Court of Appeals.

The issue before the Court here is whether a filing of a bankruptcy petition by both John Sawulski and Midwest Mechanical Systems Contracting, Inc. automatically stay the contempt proceedings. For the reasons set forth herein, the Court determines that such contempt proceedings are not stayed, and the Court may properly proceed to consider the contempt action against the respondents.

### I

By order of June 16, 1993, the United States Court of Appeals for the Sixth Circuit designated the undersigned as a Special Master for the purpose of considering issues raised with respect to the Sixth Circuit's orders or the present writ of body attachment, including the determination as to whether the respondent has purged itself of contempt and John Sawulski's abili-

ty or inability to effect such purgation. To date, this Court has conducted four hearings on the matter.

The June 16, 1993 order directed, pursuant to the order of the Sixth Circuit entered on April 28, 1993, the United States Marshal for the Eastern District of Michigan, or any District in which John Sawulski may be found, to immediately attach the person of John Sawulski and to place him in the custody of the Attorney General. The order further provided that upon being taken into custody, Sawulski would be brought before the Special Master who may release Sawulski from custody for a limited period of time, after posting a bond sufficient to ensure his compliance with the Sixth Circuit's orders within such time period. It further ordered that upon the expiration of such time period, Sawulski may be reincarcerated unless the Special Master certifies to the Sixth Circuit that Sawulski has demonstrated that the respondent has complied fully with the Court's orders or that, to the extent Sawulski has not caused the respondent to comply, that it is unable to comply, or unless the Court orders otherwise.

The April 28, 1993 order provided, *inter alia*, that the Company, Midwest Mechanical Systems Contracting, Inc., pay to the National Labor Relations Board attorney fees in the amount of $1,995.00. The order further provided that the Company pay to the NLRB the sum of $5,000.00 and that Sawulski pay to the NLRB the sum of $1,000.00 for their failure to comply with the Sixth Circuit's order of March 30, 1992. It further ordered that if full compliance with that March 30, 1992 order was not achieved within fifteen (15) days after the entry date of the order, the Company shall be assessed $100.00 per day and Sawulski shall be assessed $50.00 per day for each day of noncompliance thereafter. Moreover, it further ordered that steps be taken by the Company and Sawulski to comply with the Court's previous orders, to wit:

A. Fully comply with and obey the April 18, 1990 judgment of this court and not in any way, by action or inaction, commit, engage in, induce, encourage, permit or condone any violation of the judgment;

B. Offer employees Richardson and Southall immediate and full reinstatement to their former positions, or if those positions no longer exist, to substantially equivalent positions, without prejudice to their seniority or any other rights and privileges previously enjoyed;

C. Immediately expunge from the Company's files any reference to the discharges of Larry Richardson and Mike Southall, and notify them in writing that this has been done;

D. Immediately post at the Company's place of business, in conspicuous places, including all places where notices to employees are customarily posted, for a period of 60 consecutive days, copies of an appropriate notice in the form prescribed by the Board and signed by Sawulski, which states that the Company and Sawulski have been adjudicated in civil contempt of court for violating, resisting, disobeying, and failing and refusing to comply with the court's decree and that they will take the action in purgation ordered by the court, copies of the contempt adjudication being posted therewith, and maintain such notices and adjudication in clearly legible condition throughout such posting period, and ensure that they are not altered, defaced or covered by any other material;

E. At the Company's own expense, reproduce and mail to each of the current employees of Midwest Mechanical Systems Contracting, Inc., and all former employees who were employed by the Company at any time after August 1, 1987, a copy of the contempt adjudication and of the aforesaid notice, and provide to the Director of the Board's Seventh Region a list of the names and addresses of all employees and former employees to whom said notices and adjudication were mailed;

F. File a sworn statement with the clerk of this court and a copy thereof with the Regional Director of the Board's Seventh Region within ten days after entry of the adjudication showing what

steps have been taken by the Company and Sawulski to comply with the court's directives;

*See* Order of March 30, 1992, at 3–5.

It was further ordered that, unless John Sawulski fully complies with the Court's March 30, 1992 contempt adjudication within fifteen days (15) days after the entry of the order, attachment should issue directing the United States Marshal to take Mr. Sawulski into custody, and hold him until a bond be furnished securing his release for a limited period of time to allow compliance.

Pursuant to the order of June 13, 1993, a writ of body attachment against Sawulski was issued. On July 8, 1993, Sawulski was brought before this Court. He appeared that day without counsel. This Court ordered Sawulski to pay a cash/surety bond of $500.00, or be remanded into custody. This Court further ordered that Mr. Sawulski comply with all portions of the Sixth Circuit's orders, and that he appear for deposition at 9:00 a.m. on Tuesday, July 13, 1993 at 300 McNamara Building (the NLRB office). The matter was then adjourned to July 14, 1993. Later that day, Sawulski posted the bond.

On July 14, 1993, an additional hearing was held, again Sawulski appeared without counsel. Counsel for the NLRB, Mark Rubin, represented to the Court that he learned from the deposition that Sawulski had earned monies at repair jobs he had performed within the last couple of months, and that Sawulski's brother was holding $20,000 of his money for him. NLRB counsel also advised the Court that he had just learned that John Sawulski had been representing himself as Michael Sawulski for the purpose of bidding on contracting jobs throughout Michigan. On the basis of this new information, the Court raised the cash/surety bond to $10,000, and adjourned the matter to July 26, 1993 to allow further investigation by the NLRB. Later that day, Sawulski posted the bond.

The Court later rescheduled the hearing to July 29, 1993. An appearance was filed on behalf of Sawulski by Fred L. Gibson and Carl G. Becker of Becker & Gibson.

On July 29, 1993, a third hearing was held, and Sawulski was represented by counsel. The Court committed Sawulski to the custody of the Marshal, on the Sixth Circuit's finding of civil contempt, to be released upon payment of $16,395.00 to the Clerk of the Court, representing the $5,000.00 fine plus $100.00 per day, and the $1,000.00 fine plus $50.00 per day, and $1,995.00 in attorney fees through July 14, 1993. The Court then adjourned the matter to August 18, 1993, and directed the NLRB to bring in evidence and other testimony of monies received by the Company and Sawulski.

## II

On August 13, 1993, a voluntary petition was filed under Chapter 7 of the Bankruptcy Code on behalf of Midwest Mechanical Systems Contracting, Inc., a.k.a. Midwest Mechanical Systems. On August 17, 1993, a voluntary petition was filed under Chapter 13 of the Bankruptcy Code on behalf of John Sawulski, a.k.a. Michael Sawulski. Thereafter, counsel for Sawulski made an oral motion to the Court that these proceedings be stayed pursuant to the bankruptcy filings. In response, the Court informed the parties that before it would proceed with an evidentiary hearing, the Court would take oral argument on the question of whether this Court retains jurisdiction in light of the recent bankruptcy petitions, and whether this contempt proceeding should be stayed under the Bankruptcy Code.

The question before the Court is whether respondents' filing of two voluntary petitions in bankruptcy court, one being under Chapter 7, and the other being under Chapter 13, automatically stays this contempt proceeding ordered by the Sixth Circuit. The Court concludes that this contempt proceeding is not automatically stayed for two reasons: (1) the Court is conducting this contempt proceeding to uphold the dignity of the Court, and to vindicate the authority of the Court to enforce its orders, and (2) the Court is proceeding pursuant to the NLRB's petition for contempt for Sa-

wulski's noncompliance with the National Labor Relations Act, in the exercise of its police or regulatory powers.

The first issue is whether this Court has jurisdiction to determine the applicability of the automatic stay provision to the instant case. In *N.L.R.B. v. Edward Cooper Painting, Inc.*, 804 F.2d 934 (6th Cir. 1986), the Sixth Circuit followed the rationale of the Second Circuit[1] and held that the bankruptcy courts do not have exclusive jurisdiction to determine the applicability of the automatic stay, stating as follows:

> The court in which the litigation claimed to be stayed is pending has jurisdiction to determine not only its own jurisdiction but also the more precise question whether the proceeding before it is subject to the automatic stay.

*Id.*, at 939, *quoting, In re Baldwin–United Corp. Litigation*, 765 F.2d 343, 347 (2d Cir.1985). On the basis of the Sixth Circuit's holding in *Edward Cooper Painting*, this Court has jurisdiction to determine the applicability of the automatic stay for the purposes of this contempt proceeding.

The second issue is whether this contempt proceeding is automatically stayed by respondents' bankruptcy petitions. The automatic stay provision of the Bankruptcy Code, 11 U.S.C. § 362(a), provides in pertinent part:

> (a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, ... operates as a stay, applicable to all entitled, of—
>
> (1) the commencement or continuation, including the insurance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;
>
> (2) the enforcement, against the debtor or against the property of the estate, of a judgement obtained before the commencement of the case under this title. . . .

11 U.S.C. § 362(a)(1) and (2). Section 362(a) imposes an automatic stay upon judicial proceedings as well as other proceedings and acts to recover and enforce claims against a debtor.

In *In re Marini*, 28 B.R. 262 (Bankr. E.D.N.Y.1983), the issue before the court was whether a contempt fine was nondischargeable under § 523(a) of the Bankruptcy Code. The court pointed out the distinction between contempt proceedings intended to effectuate collection of a judgment and those intended to "uphold the dignity of the court." *Id.*, at 265. The *Marini* court determined that the fine was intended to punish the debtor, and, therefore, the contempt fine was nondischargeable under § 523(a)(7).

Later, in *In re Gedeon*, 31 B.R. 942 (Bankr.D.Colo.1983), the court also found a contempt fine nondischargeable under § 523(a)(7). The *Gedeon* court held that for the purposes of determining whether a contempt fine is dischargeable, the court "must look at whether the fine was for the benefit of the government unit or was compensation for an actual pecuniary loss." *Id.*, at 946. The court determined that a civil fine, meant to coerce a party to obey a court order, is an order imposed to uphold the dignity of the court. *Id.*

In order to determine whether contempt proceedings are subject to the automatic stay provision, reviewing courts have followed the reasoning of *Marini* and *Gedeon* to distinguish between a contempt order to enforce payment of a judgment and one intended to uphold the dignity of the court. Only contempt orders to uphold the dignity of the court are excepted from the automatic stay. For example, in *In re Morgan*, 109 B.R. 297 (Bankr.W.D.Tenn.1989), the court stated that a contempt order issued to uphold the dignity of the court can withstand a bankruptcy filing and is not violative of the automatic stay. *Id.*, at 299, *citing, In re Guariglia v. Community Na-*

---

1. *In re Baldwin–United Corp. Litigation*, 765 F.2d 343, 347 (2d Cir.1985).

*tional Bank and Trust Co.*, 382 F.Supp. 758, 761 (E.D.N.Y.1974), *aff'd*, 516 F.2d 896 (2d Cir.1975). The *Morgan* court held that the Department of Labor did not violate the automatic stay when it filed a petition for injunctive relief to require debtor to comply with the judgment arising out of violations of the Fair Labor Standards Act.

Similarly, in *US Sprint Communications Co. v. Buscher*, 89 B.R. 154 (D.Kan. 1988), the court held that the automatic stay did not prevent the sentencing of a debtor on a civil contempt order after the debtor had violated a preliminary injunction entered by the court. After the court's finding of contempt, but before sentencing, defendant filed his bankruptcy petition. Relying on the decisions in *Marini* and *Gedeon* which held that a civil contempt fine is nondischargeable when it is imposed to uphold the dignity of the court, the *Buscher* court reasoned that the civil contempt proceeding was not automatically stayed by the bankruptcy filing. In reaching this decision, the *Buscher* court weighed heavily the fact that defendant had directly violated two orders of the court, stating as follows:

> At first glance, § 362(a)(1) does seem to stay this court's sentencing power because it halts any judicial proceeding. But this is not just any judicial proceeding. This court has already determined that defendant violated two direct orders of this court. It is within this court's inherent power to take whatever steps necessary to ensure those persons within its power comply with its orders. The court cannot conceive that Congress intended to strip the court of this power, and instead permit a party to blatantly violate direct orders of the court and then seek shelter from a bankruptcy judge. If this were so, the court's orders could be rendered almost meaningless. The court must retain the ability to compel compliance with its orders; a party seeking relief from his creditors is not free to run rampant in flagrant disregard of the powers of the court. A civil contempt judgment is one effective method

of coercing compliance and of "upholding the dignity of the court."

*Id.*, at 156.

Likewise, in *Martin–Trigona v. Gouletas*, 15 B.R. 645 (N.D.Ill.1980), the court held that the bankruptcy filing did not automatically stay a criminal contempt proceeding. The court found that defendant had repeatedly ignored the orders of the court, and that "[h]is behavior in this regard has had all the earmarks of intentional conduct." *Id.*, at 646. Thus, the *Martin–Trigona* court concluded that it was necessary to proceed with the contempt hearing for the explicit purpose of "presenting Martin–Trigona with an opportunity to demonstrate that he does not seek to flout this court's authority, and to dispel the appearance of criminally contumacious conduct that clings to his previous behavior." *Id.*, at 646–647.

The facts of the instant case provide a sufficient basis to conclude that this contempt proceeding is being conducted to uphold the dignity of the court, recognizing that a court must have the power to enforce its orders. On April 18, 1990, the Sixth Circuit granted the NLRB summary enforcement of its decisions and order finding Sawulski violated the NLRA by repudiating a collective bargaining agreement and firing two employees for protected union activity. On December 7, 1990, the NLRB petitioned for contempt after determining that the directives of the judgment were not being satisfied by Sawulski. On March 30, 1992, the Sixth Circuit entered an Order Adjudging Respondent in Civil Contempt "for violating, disobeying, and refusing to comply with the court's Judgment of April 18, 1990." Because Sawulski had not purged himself of contempt by July 2, 1992, the NLRB petitioned for an assessment of contempt fines and an issuance of a writ of body attachment. Subsequently, on April 28, 1993, the Sixth Circuit granted these motions by ordering $6,000 in fines as well as $150.00 per day thereafter and $1,995 in attorney's fees. The order provided a fifteen-day grace period before the writ of body attachment issued. Because Sawulski did not purge

himself of contempt within the fifteen-day period, the Sixth Circuit appointed this Court to serve as Special Master "for the purpose of considering any issues raised with respect to the court's orders or the present writ of attachment, including the determination as to whether the respondent has purged itself of contempt and Sawulski's ability or inability to effect such purgation." To date, Sawulski has not fully complied with the directives of the Sixth Circuit, and has not otherwise purged himself of contempt. Upon this review of the facts, this Court concludes that this contempt proceeding is intended to uphold the dignity of the court, and within the court's inherent power to take whatever steps necessary to ensure those persons within its power comply with its orders.

■ Based on the foregoing, the Court finds that the bankruptcy filing does not automatically stay this contempt proceeding. Clearly, this court is proceeding to enforce compliance with the orders and judgment of the Sixth Circuit arising out of Sawulski's violation of the NLRA. The primary purpose of this contempt proceeding is not to effectuate collection of a debt or payment of a judgment. This Court is convinced that the contempt fines assessed by the Sixth Circuit were imposed as a penalty to vindicate the dignity and authority of the court.

A third issue before the Court is whether this contempt proceeding is also excepted from the stay by virtue of the "police power exception" to the automatic stay. Section 362(b) of the Bankruptcy Code provides exceptions to the automatic stay, providing in relevant part:

(b) The filing of a petition under section 301, 302, or 303 of this title ... does not operate as a stay—

.    .    .    .    .

(4) under subsection (a)(1) of this section, of the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power;

(5) under subsection (a)(2) of this section, of the enforcement of a judgment, other than a money judgment, obtained in an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power;

11 U.S.C. § 362(b)(4) and (5). Sections 362(b)(4) and (5) are otherwise known as the "police power exception" to the automatic stay.

The legislative history evinces a congressional intent that an action by a governmental unit in the exercise of its police or regulatory powers is not automatically stayed under the provisions of § 362(b)(4). The legislative history of the police power exception provides as follows:

Paragraph (4) excepts commencement or continuation of actions and proceedings by governmental units to enforce police or regulatory powers. Thus, where a governmental unit is suing a debtor to prevent or stop violation of fraud, environmental protection, consumer protection, safety, or similar police or regulatory laws, or attempting to fix damages for violation of such a law, the action or proceeding is not stayed under the automatic stay.

Paragraph (5) makes clear that the exception extends to permit an injunction and enforcement of an injunction, *and to permit the entry of a money judgment,* but does not extend to permit enforcement of a money judgment. Since the assets of the debtor are in the possession and control of the bankruptcy court, and since they constitute a fund out of which all creditors are entitled to share, enforcement by a governmental unit of a money judgment would give it preferential treatment to the detriment of all other creditors. H.R.Rep. No. 595, 95th Cong., 1st Sess. 343 (1977), *reprinted* in 1978 U.S.Code Cong. & Admin.News 5787, 5963, 6299 (Emphasis supplied).

*See, In re Hughes,* 87 B.R. 49 (Bankr. S.D.Ohio 1988).

■ The Sixth Circuit has outlined two tests for determining whether an action by a governmental unit falls within the automatic stay or is excepted under the police power exception: (1) the "pecuniary pur-

pose test" and (2) the "public policy test." *In re Commerce Oil Co.*, 847 F.2d 291 (6th Cir.1988); *N.L.R.B. v. Edward Cooper Painting, Inc.*, 804 F.2d 934 (6th Cir.1986). *See also, Smith–Goodson v. Citfed Mortg. Corp.*, 144 B.R. 72 (Bankr.S.D.Ohio 1992). Under the pecuniary purpose test, the court must determine whether the governmental proceeding relates primarily to the protection of the government's pecuniary interest in the debtor's property and not matters of public health and safety. Proceedings to protect a pecuniary interest in the debtor's property are subject to the automatic stay. Conversely, proceedings which relate to matters of public health and safety are excepted from the stay. *Id.*

▪ The second test is the public policy test. Under this test, the court must distinguish between proceedings that adjudicate private rights and those that effectuate public policy. Only those proceedings that effectuate public policy are excepted from the stay. *Id.*

The Sixth Circuit's decision in *Edward Cooper Painting* is quite instructive on this issue. *Edward Cooper Painting* involved an NLRB petition to enforce a decision and order finding unfair labor practices against a corporation, and its alter ego, a partnership. After the NLRB proceeding was initiated, the defendant corporation filed for bankruptcy. The NLRB determined that its proceeding was excepted from the automatic stay and continued the proceeding against defendant corporation. Thereafter, the NLRB found defendant corporation had committed unfair labor practices and ordered, *inter alia,* that defendant corporation reimburse all employees and the Union for any losses suffered and reinstate one named employee with back pay. On appeal, defendant corporation argued that the NLRB's order was void because it proceeded with the unfair labor practice proceeding in disregard of the automatic stay of § 362(a).

The *Edward Cooper Painting* court held that the NLRB permissibly proceeded with the hearing without obtaining relief from the stay in bankruptcy court. The court reasoned as follows:

[Section 362(b)(4) ] provides that governmental actions to enforce police or regulatory powers are *automatically excepted* from the operation of the automatic stay. There is no occasion therefore to seek relief from a stay which has no application to the proceeding in question. (emphasis added).

*Id.*, at 939. Moreover, the court held that, once proceedings are excepted from the stay, the governmental unit is also allowed to "fix the amount of penalties, up to and including *entry* of a money judgment." (Emphasis in original). *Id.*, at 943. Examining the language of § 362(b)(5), the Sixth Circuit determined that *entry* of a money judgment is excepted from the stay, *but attempts to enforce money judgments are subject to the automatic stay.* The court explained:

'Quite separate from the entry of a money judgment, however, is a proceeding to enforce that money judgment. The paradigm for such a proceeding is when, having obtained a judgment for a sum certain, a plaintiff attempts to seize property of the defendant in order to satisfy that judgment. It is this seizure of a defendant-debtor's property, to satisfy the judgment obtained by a plaintiff-creditor, which is proscribed by subsection 362(b)(5).'

*Id.*, at 943, *quoting, Penn Terra Ltd. v. Dept. of Environmental Resources,* 733 F.2d 267, 275 (3d Cir.1984).

Clearly, in the instant case, the NLRB is a governmental unit charged with the responsibility of monitoring compliance with the NLRA. The NLRB petitioned the Sixth Circuit for a contempt order against Sawulski in the exercise of its police or regulatory powers in upholding fair labor practices. Therefore, under both the language and intent of § 362(b)(4), as well as under either of the two tests outlined by the Sixth Circuit, I conclude that the automatic stay is not applicable to this contempt proceeding. The NLRB has an interest in continuing this contempt proceeding to effectuate public policy and obtain compliance with federal labor laws. Accord-

ingly, pursuant to § 362(b)(4), this Court may continue the contempt proceeding initiated by the NLRB for Sawulski's noncompliance with the NLRA.

Based on the foregoing reasons, the Court finds that this contempt proceeding is not subject to the automatic stay. The Court may properly continue the contempt proceeding, pursuant to the direction of the Sixth Circuit, to determine whether Sawulski has purged himself of contempt.