### SECURITIES AND EXCHANGE COMMISSION, Plaintiff,

v.

KENTON CAPITAL, LTD.; Donald C. Wallace; Jeffrey E. Carter; Tracy French; Harry Watson; Deltaur Partners; and Terry Plack, Defendants,

**Atlantic Pacific Guarantee Corporation and Charles Smith, Relief Defendants.**

Civil Action No. 95cv829.

United States District Court, District of Columbia.

Nov. 6, 1997.

Larry P. Ellsworth, I, S.E.C., WA, for plaintiff.

Brian E. Maas, Ronald C. Minkoff, Beldock Levine & Hoffman, L.L.P., New York City, for defendant.

Charles Smith, Santa Monica, CA, for relief defendant.

## MEMORANDUM OPINION

KOLLAR–KOTELLY, District Judge.

This matter is before the Court on the application of Plaintiff Securities and Exchange Commission (Commission) for an order holding Relief Defendant Charles Smith in civil contempt for is violation of the Court's Judgment requiring disgorgement of $126,584, plus prejudgment and post-judgment interest, reinstating an asset freeze, and requiring an accounting. The Court issued an Order to Show Cause to the defendant dated October 8, 1997, with the requirement that any opposition be file by October 23, 1997. The Court also set a show cause hearing for October 30, 1997. The Court has considered the Commission's Application, supporting Memorandum, and Exhibits, opposing papers submitted on behalf of the named defendant, including the suggestion of an automatic stay as a result of defendant's filing of a petition in bankruptcy, the Commission's response, and arguments upon the application heard by telephone conference on October 29, 1997, and at a hearing on October 30, 1997, at which Mr. Smith submitted on the papers the issue of civil contempt, and the full record herein. The Court makes the following findings of fact and conclusions of law.

### JURISDICTION OF THE COURT

On July 2, 1997, defendant Smith filed a Voluntary Bankruptcy Petition under Chapter 7 individually, and on behalf of Atlantic Pacific Guarantee (APG) and Fedsure Investors Trust in the United States Bankruptcy Court for the Central District of California. The Voluntary Bankruptcy was brought to this Court's attention on October 23, 1997, with the filing of an opposition by defendant Smith to the order to show cause. The Court has concluded that this contempt proceeding is not automatically stayed by the bankruptcy petition for two reasons: 1) the Court is conducting this contempt proceeding to uphold the dignity of the Court and to vindicate the authority of the Court to enforce its orders, and 2) the applicability of 11

U.S.C. § 362(b)(4) & (5) as it relates to income and asset identification and an accounting, and not the enforcement of the judgment. The Court is mindful that by reason of the stay, this Court cannot issue an order requiring a payment of the disgorgement or enforcing the judgment. However, this Court can take actions consistent with a civil contempt proceeding. The Court has the right to determine whether or not defendant Smith has defrauded the Court by not paying the disgorgement due well before the bankruptcy stay. Although the filing of the bankruptcy petition has frustrated the ability of the Commission to collect the disgorgement, the Court can properly limit its inquiry into how the future damage to the Commission can be mitigated. See *In re Weil,* C.A. No. 95–21570–BKC–RBR (Bankr.S.D.Fla.) (order entered July 21, 1995); *see also Kearns v. Orr,* 168 B.R. 423 (D.Kan.1994); *National Labor Relation Board v. Sawulski,* 158 B.R. 971 (E.D.Mich.1993); *Stovall v. Stovall,* 126 B.R. 814 (N.D.Ga.1990).

### *FINDINGS OF FACT*

1. It is undisputed that defendant Smith has not paid the disgorgement of $126,584 and the interest accrued. On July 19, 1996 this Court entered its Final Judgment in this case against APG and defendant Smith with their consent. The disgorgement was to be paid in 90 days from the entry of the order. Defendant Smith has claimed an inability to make the payment. The underlying suit involves investors in Kenton Capital Ltd. who were promised unrealistic returns, with no risk to their principal in an investment market that did not exist, and whose repayment of their investment was guaranteed by relief defendants Smith and APG. The disgorgement represents an amount that Kenton Capital Ltd. had received from its investors and had passed on to APG and defendant Smith as fees. Defendant Smith has never explained how the money received as fees was expended.

2. Defendant Smith is the president and sole shareholder of APG, and APG is the immediate successor of Fedsure Investors Trust in which defendant Smith was the Trustee.

3. Since the entry of the judgment, defendant Smith allegedly has paid back personal loans or returned what he claims were borrowed assets. The Court cites the following examples: 10 million dollars worth of stock was returned to the original chairman of Fedsure, Roger Thompson, (C. Smith Tr. 439–40); a $50,000 certificate of trust listed as an APG asset was returned to the company which issued it (Pl.Ex. 125; C. Smith Tr. 339–43); medical receivables of 20 million dollars, and $60,000 in a credit union account are disputed funds which defendant Smith is willing to surrender by not contesting the ownership in court (Pl.Ex. 136; C. Smith Tr. 314, 316–19, 337–38); $119,000 was listed on the APG asset list, now unaccounted for, at a time when there have been no major APG expenditures. (C. Smith Tr. 335–37; Pl.Ex. B).

4. In addition, defendant Smith has a business associate, Quincy Quinn, with whom he shares an office. Defendant Smith has claimed that he returned 2.5 million dollars worth of fixed assets to Mr. Quinn, as well as $40,000 out of corporate funds to repay a personal advance from Mr. Quinn. However, Mr. Quinn invoked his Fifth Amendment right not to incriminate himself when asked questions about his relationship with defendants Smith, APG, and Fedsure Investors Trust. (Pl.Ex. 115; C. Smith Tr. 66–68, 337–38, 350–53; Quinn Tr. 24–38; C. Smith Tr. 377, 382; Quinn Tr. 34–38.) Mr. Quinn's invocation of his right not to incriminate himself casts serious doubt as to whether Mr. Smith actually made the transfers to Mr. Quinn, as well as about the validity of any alleged transfer of assets or funds, assuming that has occurred. The Court's skepticism is greatly heightened by Mr. Quinn's actions.

5. Defendant Smith has provided neither any supporting documentation that evidences that these loans exist or that the return of assets was legally required, nor any documentation to support the fact that these loans or assets were actually repaid or returned. The Court has only defendant Smith's bald and conclusory statements in his affidavit to support his purported actions. The Court is unwilling to accept his word without more support.

6. As to statements regarding his present assets, defendant Smith has admitted that he submitted·to the Commission false financial statements. He admitted that he omitted on his financial statement the alleged payments to Mr. Quinn, his ownership of certain stocks, and the correct valuation of his assets. (C. Smith Tr. 210; *compare* Pl.Ex. 126 *with* C. Smith Tr. 285, 217, 221, 226–28).

7. As for income, defendant Smith has stated that his income most recently was $26,000 a year. However, the Commission has uncovered deposits of over $70,000 in eight months since the Court's order entering Final Judgment. (C. Smith Tr. 21–23, 106, 177–80, 282, 149–53; Pl.Ex. 153, 159, 146, 145, 147; Pl.Ex. G, H, I, J, L, M, N, P, Q). When pressed, Smith has admitted that in 1996 he had an income of approximately $100,000. (Pl.Ex. 153; C. Smith Tr. 467–68). He also admitted depositing $25,000 in an account for a nest egg for his wife. (Pl.Ex. 153; C. Smith Tr. 466–67, 469–70; C. Smith Aff. ¶¶ 16 and 17).

8. Defendant Smith has also variously listed his net worth as $6,00,000 on one investment account, and $100,000 on his bankruptcy petition. (Pl.Ex. 153; C. Smith Tr. 467–68).

9. The Commission also uncovered a bank account which list Mr. Quinn as the owner/principal of an account for Atlantic Pacific on which checks have been drawn by Mr. Quinn. Defendant Smith incorrectly claims that the account is in the name of Pacific Coast Guarantee, a different business, and not Atlantic Pacific. (*Compare* Pl.Ex. F *with* Smith Aff. ¶ 28).

### FACTUAL CONCLUSIONS

The Commission has laid out a pattern of false statements by defendant Smith, has identified income, assets, and net worth statements with supporting documentation or testimony which belie defendant Smith's claim of poverty. Other than filing for bankruptcy, which in and of itself proves nothing, Defendant Smith has provided the Court with no documentary proof that supports his claim that he does not have the income or the assets to pay this disgorgement, and/or that he has not had the income and assets to pay

the disgorgement to date. It is also clear to the Court that it is imperative that defendant Smith be required to identity, under oath, a detailed statement of his assets and income with supporting documentation.

### CONCLUSIONS OF LAW

The Court has inherent power to enforce compliance with its lawful orders. Civil contempt is the remedial device available to the Court to achieve compliance with its orders. *See Shillitani v. United States,* 384 U.S. 364, 86 S.Ct. 1531, 16 L.Ed.2d 622 (1966); 18 U.S.C. § 401. The Commission has met its burden by proving by clear and convincing evidence that there was a lawful court order in effect, which required defendant Smith to pay a disgorgement fee, and hat the defendant has failed to comply with the court's order. *Petroleos Mexicanos v. Crawford Enterprises, Inc.,* 826 F.2d 392 (5th Cir.1987).

Defendant Smith has not met his burden of proving that he lacks the financial ability to pay the disgorgement at this time, or at any time since the court order in this case, or that he has made reasonable efforts to meet his obligations to the court. To the contrary, it is clear to the Court that he has had more than sufficient funds or assets to make the required payment, but has either dispersed or spent the funds and assets with no credible explanation as to what other obligations he has which would take precedence over the obligations to the court. The admittedly false financial statements he has produced, and the lack of documentation to support his claims·defeats his plea of poverty. *CFTC v. Wellington Precious Metals, Inc.,* 950 F.2d 1525 (11th Cir.), *cert. denied,* 506 U.S. 819, 113 S.Ct. 66, 121 L.Ed.2d 33 (1992); *Huber v. Marine Midland Bank,* 51 F.3d 5 (2d Cir. 1995).

### CONCLUSION

For the foregoing reasons, the Court finds Relief Defendant Charles Smith in civil contempt. An order accompanies this Memorandum Opinion.

## ORDER HOLDING DEFENDANT CHARLES SMITH IN CIVIL CONTEMPT AND IMPOSING SANCTIONS

This matter is before the Court on the application of Plaintiff Securities and Exchange Commission (Commission) for an order holding Relief Defendant Charles Smith in civil contempt [# 115] for his violation of the Court's Judgment requiring disgorgement of $126,584, plus prejudgment and post-judgment interest, reinstating an asset freeze, and requiring an accounting. The Court has considered the Commission's Application; supporting Memorandum; exhibits; opposing papers submitted on behalf of the named defendant, including the suggestion of an automatic stay as a result of defendant's filing of petition in bankruptcy; the Commission's response; and arguments upon the application heard by telephone conference on October 29, 1997, and at a hearing on October 30, 1997; the full record herein. The Court's Memorandum Opinion issued this date which sets out the Court's findings of fact and conclusions of law which is incorporated as part of this order.

WHEREAS, it appears from the above–described materials that:

1. Relief Defendants Charles Smith and Atlantic Pacific Guarantee Corporation have failed to comply with the Judgment of this Court dated July 19, 1996, requiring them to disgorge investor funds in the amount of $126,584, plus prejudgment interest, into the registry of this Court, for which sum they are jointly and severally liable;

2. Defendant Charles Smith has failed to demonstrate an inability to comply with the Judgment;

3. The Court is conducting this contempt proceeding to uphold the dignity of the Court and to vindicate the authority of the Court to enforce its orders; and

4. This contempt proceeding also falls within the exceptions of 11 U.S.C. §§ 362(b)(4) & (5) as it relates to assets and income identification and an accounting to mitigate any arm done to the Commission by the non–payment, and so is not subject to the automatic stay, although execution on the money judgment will require action by the Bankruptcy Court.

WHEREFORE, the Court is satisfied that the Commission has made a sufficient and proper showing in support of the relief granted herein, pursuant to 18 U.S.C. § 401.

NOW THEREFORE,

### I.

IT IS HEREBY ORDERED that Charles Smith is in civil contempt of the order of this Court contained in the Judgment of July 19, 1996 regarding disgorgement of investor funds to the United States.

### II.

IT IS FURTHER ORDERED that Charles Smith identify assets sufficient to pay the judgment in this action of the amount of $126,584, plus prejudgment interest of $9,984.35, for a total disgorgement amount of $136,468.35, plus post–judgment interest, within thirty (30) days of entry of this Order.

### III.

IT IS FURTHER ORDERED that defendants Charles Smith and his company, Atlantic Pacific Guarantee Corporation, and each of them, shall, within thirty (30) days of receipt of this Order, file with this Court and serve upon the Commission, through the Commission's counsel, as of the date of production of the statement to the Commission, a sworn accounting of all of their assets, and fully document what has happened to any assets Charles Smith or any entity he controlled, have claimed to have had since January 1, 1993, including:

a. all securities, funds, real estate, and other assets held in its or his name, or in which it or he has had any direct or indirect beneficial interest, including funds held by any legal counsel, stating the location of each of the assets;

b. each account with any financial institution or brokerage firm maintained in its or his name, or in which he or it has or has had any direct or indirect beneficial interest;

c. the name and address of each location from which it or he have done business or received funds or assets since entry of the judgment in this case;

d. every transaction in which any funds or other assets of any kind were transferred between or among itself or himself and any other defendant or defendants in this action, or from it or him to any other person or to any entity in which any of the defendants or other persons have any ownership interest, or from it or him to any other person or to any entity in which it or him, including any of his relatives, or in which Quillan Quinn or any partner of Smith, have any ownership interest; and

e. all funds received from any person, since entry of the Judgment in this case, including a list of:

   (i) the name, address, and telephone number of each such person; and

   (ii) the amount received and a statement of the location and disposition of any funds so received.

## IV.

IT IS FURTHER ORDERED that, if the requirements of Section II of this Order are not complied with by the time set forth therein, a warrant be issued for the arrest of Relief Defendant Charles Smith by reason of his contempt. He shall remain confined until such time as this Court determines that he has complied fully with all provisions of this Court's order.