SECURITIES AND EXCHANGE COMMISSION, Plaintiff,

v.

**Paul A. BILZERIAN, Defendant.**

**No. Civ.A. 89–1854 SSH.**

United States District Court, District of Columbia.

Jan. 12, 2001.

Judith Roxanne Starr, SEC, Div. of Enforcement, Washington, DC, for plaintiff.

Paul A. Bilzerian, Tampa, FL, pro se.

## OPINION

STANLEY S. HARRIS, District Judge.

Before the Court are defendant Bilzerian's submissions in response to the Court's August 21, 2000, Opinion and Order setting temporary conditions for purging the Court's finding of contempt in that Order, and plaintiff SEC's response thereto.[1] The Court also considers Bilzerian's Motion To Modify the Court's August 21, 2000, Opinion and Order and the SEC's response thereto. Lastly, before the Court is the Receiver's Notification of defendant's recently filed Chapter 7 bankruptcy case. The Court first finds that the Motion To Modify is meritless and warrants no discussion. The Court next finds that defendant has not met the temporary purgation conditions, and therefore orders that he be incarcerated until he complies with the conditions set in the August 21, 2000, Order. The Court's reasons for this decision follow.

## Background

As the parties in this case are well familiar with its background, the Court only briefly sets forth certain relevant facts. In 1991, the Court found Bilzerian liable for securities fraud.[2] In connection with that liability, the Court ordered Bilzerian to disgorge $33,140,787.07 in profits from the fraud on January 28, 1993, and on June 23, 1993, ordered him to disgorge an addition-

al $29,196,812.46 in prejudgment interest ("the 1993 disgorgement orders"). The SEC did not seek to enforce the roughly $62 million disgorgement judgment for over five years due to protracted litigation over the possible dischargeability of the judgment in a bankruptcy proceeding in Florida. In 1998, the Eleventh Circuit affirmed the ruling of the United States District Court for the Middle District of Florida that the disgorgement judgment against Bilzerian was not dischargeable in bankruptcy. *In re: Bilzerian*, 153 F.3d 1278 (11th Cir.1998).

In November 1998, the SEC moved this Court to hold Bilzerian in civil contempt of the 1993 disgorgement orders because he had not made any payments on the $62 million judgment. Bilzerian argued that he was unable to comply with the disgorgement orders essentially because he had no financial resources. On August 21, 2000, after receiving substantial briefing from the parties and holding a hearing, the Court found Bilzerian in contempt of its 1993 disgorgement orders. The Court found that (1) Bilzerian had not demonstrated his financial inability to comply "categorically and in detail" as required by case law; (2) Bilzerian had not made all reasonable efforts to comply with the orders; and (3) any financial inability to comply was self-created because Bilzerian had separated his assets from himself and funneled them to shell companies, partnerships, and trust entities (collectively, the "Bilzerian-related entities") through outright transfers as well as payment ar-

1. The Court's August 21, 2000, Order set forth a schedule for a submission from Bilzerian and a response from the SEC. The Order did not provide for a reply from Bilzerian to the SEC's response. Nevertheless, on October 30, 2000, Bilzerian sent a reply memorandum to chambers. The Court declines to address the reply in full, but notes that it contains nothing to alter the Court's ultimate conclusions based on the earlier pleadings.

Furthermore, on December 1, 2000, Bilzerian sent a letter to the Court with his monthly check to the Court registry and an accounting of his income and expenses from

September 27, 2000, to November 30, 2000, and other documentation. The Court finds little in Bilzerian's cover letter that requires a response, other than noting his submission of a $2,500 (instead of $5,000) check and his request to be relieved of the monthly fine until he gains other employment.

2. Since the Second Circuit affirmed Bilzerian's criminal conviction for securities fraud and conspiracy on January 3, 1991, *United States v. Bilzerian*, 926 F.2d 1285 (2d Cir. 1991), Bilzerian has been proceeding *pro se.*

rangements made with his employer, Cimetrix. The Court set a number of conditions which Bilzerian had to meet in order to purge the contempt. These purgation conditions were set without prejudice and were only temporary because Bilzerian had not complied with the Court's order for a full accounting of his assets; without the accounting of his assets, the Court could not ascertain the precise amount of the $62 million judgment Bilzerian is capable of paying. These temporary conditions required Bilzerian to (1) pay $5,000 on the first day of each month until further order of the Court, and (2) submit an additional accounting by October 2, 2000 as detailed in ¶¶ 1–10 of the August 21 Order. The Court indicated that it would set final purgation conditions after it received Bilzerian's additional accounting or, if he failed to submit an accounting, after the deadline for doing so had passed. In its Order, the Court emphasized that Bilzerian's failure to comply with the temporary purgation conditions would result in his incarceration until such time as he complies with those conditions.

On October 2, 2000, the Court received a package from Bilzerian containing a letter, a $5,000 check, and various documents and declarations purporting to provide the accounting ordered by the Court.[3] The SEC submitted its response to Bilzerian's accounting on October 16, 2000. In his letter, Bilzerian indicated that he intended to be in Europe on business between October 14 and 24, 2000, and requested a telephonic status conference before he would depart so that he would know whether the Court intended to incarcerate him for not complying with the order for an accounting. The Court denied his request by order dated October 6, 2000.

On October 4, 2000, Bilzerian submitted a motion to modify the Court's August 21, 2000, Opinion and Order, which the SEC opposes. On October 30, 2000, the Court received a reply memorandum from Bilzerian, along with another $5,000 check, and a request for oral argument. On November 30, 2000, Bilzerian sent a letter containing a third check, this time for only $2,500, as well as additional documentation.

On December 22, 2000, the Court issued an Order granting an ex parte motion by the SEC for the appointment of a receiver, Deborah R. Meshulam ("Receivership Order"). By correspondence dated December 22 and 26, 2000, she served the "Bilzerian Related Entities" and various related persons and entities with copies of the Receivership Order, requesting the immediate surrender "of all assets as well as immediate access to any assets, books, records or other property of Bilzerian in which the Court has found Bilzerian to have an interest." On January 2, 2001, Bilzerian filed for Chapter 7 bankruptcy again in the United States Bankruptcy Court for the Middle District of Florida.[4]

## Analysis

Before the Court proceeds with its analysis, the Court denies Bilzerian's request for oral argument. Given the nature of the requested information, the Court can best evaluate its adequacy from the written submissions and thus sees no reason to delay these proceedings further.

## A. Jurisdiction of the Court

■ The Court first addresses whether this proceeding is affected by the automatic stay provision of the Bankruptcy Code, 11 U.S.C. § 362(a), by virtue of Bilzerian's

---

3. In this filing, Bilzerian requested the Court to consider the documents confidential. The SEC does not oppose maintaining confidential the tax returns of Bilzerian and his wife. The Court received these same representations during a hearing on March 5, 1999, and agreed to maintain the tax returns confidential.

4. The Court determined as a matter of courtesy not to incarcerate Bilzerian during the Christmas season, giving him an unintended window of time within which to file his second bankruptcy petition. The Court still shall afford him the opportunity to surrender himself voluntarily.

recent bankruptcy filing. As a threshold issue, it is clear that "[t]he court in which the litigation claimed to be stayed is pending has jurisdiction to determine ... whether the proceeding before it is subject to the automatic stay." *NLRB v. Sawulksi*, 158 B.R. 971, 975 (E.D.Mich.1993). *See In re: Montana*, 185 B.R. 650, 652 (Bankr. S.D.Fla.1995) ("bankruptcy courts do not have exclusive jurisdiction in determining the applicability of the automatic stay.").

Under 11 U.S.C. § 362(a), almost all proceedings against a debtor are stayed upon declaring bankruptcy. Certain proceedings, however, are excepted from the automatic stay. The Court finds that this proceeding—currently in a civil contempt phase—is excepted from the automatic stay for two reasons: (1) the exception for a governmental unit to exercise its powers under 11 U.S.C. § 362(b)(4) applies, and (2) the Court may conduct proceedings to uphold the dignity of the Court and to vindicate the authority of the Court to enforce its orders.

### 1. 11 U.S.C. § 362(b)(4)

■ 11 U.S.C. § 362(b) sets forth certain proceedings that are excepted from a stay. One such exception is contained in 11 U.S.C. § 362(b)(4), which allows:

> the commencement or continuation of an action or proceeding by a governmental unit ... to enforce such governmental unit's ... police and regulatory power, including the enforcement of a judgment other than a money judgment, obtained in an action or proceeding by the governmental unit to enforce such governmental unit's ... police or regulatory power....

This exception (sometimes referred to as the "police power exception") does not apply to governmental actions that are brought to enforce a money judgment.

■ The Court finds that any order regarding Bilzerian's contempt of court until he produces a full accounting of his assets to purge his contempt of the 1993 disgorgement orders does not constitute enforcement of a money judgment. A court may go so far as to enter a money judgment, *see, e.g., NLRB v. 15th Ave. Iron Works, Inc.* 964 F.2d 1336, 1337 (2d Cir. 1992); however, "anything beyond the mere entry of a money judgment against a debtor is prohibited by the automatic stay." *SEC v. Brennan*, 230 F.3d 65, 71 (2d Cir.2000). *See also* 2 Daniel R. Cowans *et al.*, Cowans Bankruptcy Law and Practice § 11.5 at 517 (1994) ("Steps preparatory to money collection ... have been properly barred as not within the exception ."); *Sawulski*, 158 B.R. at 978 ("It is [the] seizure of a defendant-debtor's property, to satisfy the judgment obtained by a plaintiff-creditor, which is proscribed ....") (quotation · omitted). *See, e.g., Brennan*, 230 F.3d at 71 (a repatriation order requiring that a defendant repatriate assets in an offshore trust to the Court's registry for distribution by the bankruptcy court was held to be enforcement of a money judgment); *EEOC v. Rath Packing Co.*, 787 F.2d 318 (8th Cir.1986) (the district court's entry of a specific payment schedule went beyond the entry of a money judgment).

■ The Court is not, by this Opinion and its accompanying Order, requiring payment of the disgorgement or seizing assets. Rather, the Court is addressing whether Bilzerian has complied with the temporary purgation conditions insofar as they require an accounting of his assets in the contempt context. Requiring an accounting of assets does not violate the automatic stay. *See SEC v. Kenton Capital, Ltd.*, 983 F.Supp. 13, 14–15 (D.D.C. 1997) ("[T]his Court can take actions consistent with a civil contempt proceeding. The Court has the right to determine whether or not defendant Smith has defrauded the Court by not paying the disgorgement due well before the bankruptcy stay.")

### 2. Vindicating the authority of the Court

■ This is part of a civil contempt proceeding against Bilzerian. There are,

however, two kinds of civil contempt proceedings—those to enforce payment of a judgment and those to uphold the dignity of the court. *Sawulski*, 158 B.R. at 975. "Only contempt orders to uphold the dignity of the court are excepted from the automatic stay." *Id.* A prime example of such a contempt order is found in *US Sprint Communications Co. v. Buscher*, 89 B.R. 154 (D.Kan.1988). The court found Buscher in civil contempt of a preliminary injunction, but before the court sentenced him on that contempt, Buscher filed for bankruptcy. The court found that the automatic stay provision did not bar its sentencing (which consisted of civil contempt fines), after finding that:

> this is not just any judicial proceeding. This court has already determined that defendant violated two direct orders of this court. It is within this court's inherent power to take whatever steps necessary to ensure those persons within its power comply with its orders.

*Id.* at 156. Similarly, in *Sawulski*, 158 B.R. at 977, the Special Master found that proceedings to determine whether defendant had purged himself of contempt were not barred by the automatic stay, after finding that the primary purpose of the contempt proceeding was to vindicate the dignity and authority of the court. *See also In re Marini*, 28 B.R. 262 (Bankr. E.D.N.Y.1983); *In re Gedeon*, 31 B.R. 942 (Bankr.D.Colo.1983).

The Court finds that this contempt proceeding clearly is to vindicate the integrity of the Court. The Court has previously found Bilzerian in contempt of its 1993 disgorgement orders, and, as will be discussed in this Opinion, he has not complied

even minimally with the Court's temporary purgation conditions. The Court has inherent power to ensure compliance with its orders. As the *Buscher* court stated:

> The court cannot conceive that Congress intended to strip the court of this power, and instead permit a party to blatantly violate direct orders of the court and then seek shelter from a bankruptcy judge. If this were so, the court's orders could be rendered almost meaningless. The court must retain the ability to compel compliance with its orders; a party seeking relief from his creditors is not free to run rampant in flagrant disregard of the powers of the court.

The Court declines to allow Bilzerian to seek shelter once again in the bankruptcy court from this Court's inherent power to enforce its orders.[5]

## B. Compliance with the August 21, 2000 Order

■ As for the monthly payment requirement, the Court finds that Bilzerian did comply for the months of October and November, but that his December monthly payment was only half of the required amount. Bilzerian explains in his cover letter dated November 30, 2000, that given his financial circumstances arising from this lawsuit and other lawsuits, he was unable to make the full $5,000 payment. At this point, the Court merely states that Bilzerian has not complied strictly with the Court's requirement for a December payment, but is unable to determine whether the noncompliance was legitimately caused by financial hardship or by Bilzerian's choices in managing his assets.

---

5. The Court also notes that while it does not deem it appropriate to make a finding as to the bad faith nature of Bilzerian's second bankruptcy filing (the first having been closed only some six months ago), it notes that the filing occurred promptly after the Receiver requested his assets and books or records relating to the assets. Furthermore, Bilzerian has been found previously to have been involved with a bad faith attempt to file bankruptcy for the purpose of circumventing another legal proceeding. *See Singer Furniture Acquisition v. SSMC Inc. N.V.*, 254 B.R. 46, 52 (M.D.Fla.2000) (upholding bankruptcy court's finding of bad faith in filing a bankruptcy petition, stating that "[i]n fact, Bilzerian admitted that Singer attempted to invoke the automatic stay provisions in order to evade the pending litigation and trial in Virginia.") In that case, Bilzerian was Singer Furniture Acquisition's sole officer, director, and employee. *Id.* at 50.

The Court finds that Bilzerian has not met the requirement to submit a full accounting of his finances. The August 21 Order provided in detail what information Bilzerian was to submit to the Court. The purpose of that order for an accounting was to enable the Court to determine the amount of the disgorgement judgment Bilzerian could pay in order to set final purgation conditions. Bilzerian's submission is plainly inadequate.

First, Bilzerian did not submit copies of the trust instruments of the Paul A. Bilzerian and Terri L. Steffan Revocable Trust of 1995 (the "Family Trust") and the Paul A. Bilzerian and Terri L. Steffan Irrevocable Trust of 1994 (the "Children's Trust") as required by ¶ 9 of the order, or copies of the formation documents of Bicoastal Holding Company, Overseas Holdings Limited Partnership, and Overseas Holding Company, as required by ¶ 10.[6] Nor has Bilzerian provided any financial records or information with respect to these five entities, as required by ¶¶ 2, 5, and 7 of the Court's order. Bilzerian's failure to provide a copy of the Family Trust instrument is particularly egregious because the Family Trust is at the apex of the structure comprising the Bilzerian-related entities, and—directly or indirectly—holds almost every other asset described in the Court's August 21st Opinion. See Opinion at 10. Moreover, the Family Trust was created under the laws of the Cook Islands, which present an attractive environment for the creation of so-called "asset protection trusts" because they provide a

settlor with significant control over the trust; for example, the law gives the settlor the power to change the trustee and the trust protector. Without a copy of the trust instrument, however, it is impossible to ascertain how much control Bilzerian retains over the Family Trust, such as how easily he could reinstate himself as trustee and beneficiary of the trust. See August 21, 2000, Opinion at 22–24.

■ Bilzerian's stated reasons for not providing any of the formation documents or financial records of the Bilzerian-related entities are that the trustee and trust protector of the Family Trust—which directly or indirectly controls all of the other Bilzerian-related entities save the Children's Trust—and the trustee of the Children's Trust declined to turn the documents over to him, and that he lacks legal authority to provide them to the Court. These alleged reasons are neither credible nor sufficient to establish his inability to comply with the Court's Order. First, Bilzerian does not allege that he does not have access to the relevant documents, only that he may not turn them over.[7] Second, as the SEC correctly argues, Bilzerian's asserted lack of legal authority to turn over the documents is conclusory and, without any of the formation documents of the Bilzerian-related entities, it is impossible to evaluate his claim. See SEC's Opp'n at 2–3 & n. 2. In short, Bilzerian has not established that he cannot supply the relevant documents or that he has made all reasonable efforts to do so.[8]

6. All of these entities constitute the "Bilzerian-related entities," to which Bilzerian has transferred, and by means of which he appears to be attempting to hide, his assets.

7. With respect to the Family Trust, the Court has stated:
It is inconceivable that Bilzerian does not have the ability to provide the Court with a copy of the Trust instrument; he and his wife were the Trust's settlors, until recently he was both its trustee and a beneficiary, its current trustees and Trust protector are members of the family, and the sole current beneficiary is his wife. Thus, he clearly has access to the document.

Opinion at 22 n. 23. Bilzerian also serves as President of Bicoastal Holding Company and, thus, has access to its formation documents and financial records. Bilzerian has provided nothing to rebut the inference that he has access to the relevant trust and company documents.

8. With respect to the Children's Trust, Bilzerian attaches a letter from Ernest B. Haire, III, the Trustee for the Children's Trust, indicating that Mr. Haire would be willing to provide the Court with the trust documents only under certain conditions maintaining the confidentiality of the documents. While the Court is doubtful that any reasonable basis for

The second area in which Bilzerian's compliance with the Court's order for an accounting is deficient pertains to his disclosure of his own finances. Bilzerian states in his declaration that he has no material assets and that his total assets are less than $5,000, *see* ¶ 1; that he has not received any material assets from any person or entity since 1997 other than $7,000 from Bicoastal for services rendered between 1993 and 2000, all of which—after taxes—he paid into the Court registry, *see* ¶ 3; that no expenditures exceeding $1,000 have been made by him or on his behalf since 1997, *see* ¶ 4; and that the only transfer of assets he has made since 1996 was the 1997 transfer of his home by him and his wife, as tenants by the entireties, to Overseas Holdings Limited Partnership, *see* ¶ 5.

Bilzerian also provided his personal income tax returns for 1996, 1998, and 1999, as required by the order for an accounting. Although it is hard to assess Bilzerian's purported financial resources in a vacuum, his declaration still appears deficient under the terms of the Court's Order. For example, the Court directed him to disclose each account he has with any financial institution, including the account statements from each institution. *See* Order ¶ 1b. Although Bilzerian indicated that he has an account with Bank of America (containing under $1,500), he did not provide an account statement because he "ha[s] not received any bank statements for the account." Bilzerian Decl. ¶ 1b. The Court's order clearly required "the account statements from each financial institution or brokerage firm," not simply statements that he happened to receive. Even if the Court were to believe that Bilzerian has not received any bank statements, the Court sees no reason preventing Bilzerian from obtaining statements for his own financial or brokerage accounts. Bilzerian's failure to request the statements from his financial institution or brokerage firm falls far below a reasonable effort to comply with the Court's order, and suggests a clear attempt to conceal activity in his accounts.

Another example of the deficiency of Bilzerian's accounting is his statement that he has not received any "material" assets from any person or entity since January 1, 1997, apart from the noted $7,000 transfer last month. *See id.* ¶ 3. The Order directed Bilzerian to document all of the assets he has received since January 1, 1997, not only those qualifying as "material" (a qualifier which Bilzerian leaves undefined). By including this limitation, Bilzerian may be trying to conceal relatively small asset transfers that, as a whole, prove to be significant. It simply strains credulity that Bilzerian could have lived for three years without receiving any assets. Nor does it appear that his wife could have supported him during this period because, according to their joint federal income tax returns for 1996–1999, she (and he) did not earn any income. While Bilzerian may respond that his living expenses were paid by Bicoastal or Cimetrix, this draws attention to another possible deficiency of his submission to the Court: Bilzerian claims that he cannot recall any expenditures exceeding $1,000 that were made *on his behalf* during the last three years except for "routine business expenses made in the ordinary course of business for Cimetrix and Bicoastal Holding Company and for the benefit of those entities." *Id.* ¶ 4. This "routine business expenses" category appears deliberately vague because what is for the benefit of Cimetrix and Bicoastal undoubtedly is for the benefit of Bilzerian as well, and likely covers his living expenses.[9]

---

maintaining these documents confidential exists, Bilzerian must present any such request in a motion to the Court. If this concern is in fact a genuine issue, Bilzerian must make an effort to overcome obstacles in obtaining the documents. The Court will not *sua sponte* issue any confidentiality orders based on a statement from a non-party contained in an attachment.

9. Relatedly, the SEC argues that Bilzerian continues to reside in his Florida home,

In sum, Bilzerian's submission does not satisfy the Court's temporary purgation conditions because his accounting with respect to both his own financial condition and that of the Bilzerian-related entities is sorely deficient. Bilzerian has not established that he is unable to comply with these conditions; indeed, with respect to the documents of the Bilzerian-related entities, he merely asserts that he cannot provide them, but the Court has found this assertion to be non-credible.

## C. Incarceration

■ Given Bilzerian's facially deficient accounting, the only remedy is to incarcerate Bilzerian until he provides the information covered by the Court's order or, at a minimum, until he demonstrates a credible and good faith effort to do so. The August 21 Opinion and Order clearly warned Bilzerian that failure to comply with the temporary purgation conditions would result in his incarceration. Once Bilzerian provides an appropriate accounting, the Court will set final purgation conditions with respect to its finding that Bilzerian is in contempt of the 1993 disgorgement orders.[10]

The Court's primary concern at this point in time is with Bilzerian's failure to provide the requisite financial information. That concern, coupled with the possibility that Bilzerian may claim that he will not be entitled to receive his monthly salary, prompts the Court now to suspend the provision of the August 21st Order requiring him to make monthly payments of $5,000.[11]

## Conclusion

For the foregoing reasons, the Court finds that defendant Bilzerian has not met the temporary purgation requirements. The Court will incarcerate Bilzerian until such time that he meets the purgation requirements (excluding the monthly payment provision). An appropriate Order directing defendant's incarceration accompanies this Opinion.

## ORDER

For the reasons stated in the accompanying Opinion, it hereby is

ORDERED, that defendant Bilzerian's Motion To Modify the Court's August 21, 2000, Opinion and Order is denied. It hereby further is

ORDERED, that defendant Bilzerian shall surrender to the custody of the U.S. Marshals Office for the Middle District of Florida, located in the United States Courthouse, 801 N. Florida Avenue, 4th Floor, Tampa, Florida, by 10:00 a.m. on Friday, January 19, 2001.[1] It hereby further is

ORDERED, that the U.S. Marshals Service shall request designation from the

---

which was valued at over $6.5 million in 1996, and "is able to fund skiing vacations (Op. at 4), fly to Washington for the contempt hearing, and expend resources for legal research, word processing, copying and supplies, in this and his numerous other litigations. Thus, while Bilzerian has changed the form of ownership of his assets, he is continuing to have the beneficial enjoyment of them. The only conclusion that can be drawn from this evidence is that Bilzerian's nominal transfers should be disregarded." SEC's Opp'n at 4 (citation omitted).

10. As explained above, the August 21 Opinion and Order did not set final purgation conditions because Bilzerian had not provided a full accounting of his assets; it also stated that even if Bilzerian did not submit the information required by the order for an accounting, the Court would set final purgation conditions. The Court will not, however, set final purgation conditions at this time because it is impractical to set final purgation conditions without greater knowledge of Bilzerian's finances.

11. The Court notes that although Bilzerian requests in his November 30, 2000, submission the Court's "permission" to resign from Cimetrix, the Court has no power over Bilzerian's employment decisions.

1. Under Fed.R.Civ.P. 4.1(b), "[a]n order of civil commitment of a person held to be in contempt of a decree or injunction issued to enforce the laws of the United States may be served and enforced in any district."

Bureau of Prisons for the nearest appropriate federal facility to Tampa, Florida, for defendant's further incarceration.[2] The Court directs that defendant Bilzerian be incarcerated in a Bureau of Prisons facility due to the special circumstances of this case. It hereby further is

ORDERED, that the U.S. Marshals Office for the Middle District of Florida shall notify the Court of the fact of defendant Bilzerian's appearance or non-appearance on January 19, 2001. It hereby further is

ORDERED, that defendant Bilzerian shall remain incarcerated until such time that Bilzerian has complied with the conditions set forth in the Court's August 21, 2000, Opinion and Order, with the exception of paying $5,000 into the Registry of the Court on the first day of each month, as determined by further order of this Court It hereby further is

ORDERED, that if defendant does not appear voluntarily by 10:00 a .m. on January 19, 2001, the U.S. Marshals Service shall take him into custody, and to effectuate the arrest, may enter his residence at 16229 Villareal de Avila, Tampa, Florida 33613 and use such force as deemed necessary. It hereby further is

ORDERED, that this Opinion and Order shall be served on defendant Bilzerian at his residence by both Federal Express overnight mail and facsimile.[3]

SO ORDERED.

---

**2.** The U.S. Marshals Service has primary jurisdiction in federal civil contempt commitments. 28 C.F.R. § 522.11(a). Under 28 C.F.R. § 522.10, federal civil contempt commitments may be referred to the Bureau of Prisons, Either the U.S. Marshals Service may request designation from the Bureau of Prisons, or the committing court may specify a Bureau of Prisons institution as the place of incarceration. 28 C.F.R. § 522.11(b)—(c).

**3.** Bilzerian provided his facsimile number in a letter to the SEC attached to his submission to the Court dated September 24, 2000.